**UNITED STATES OF AMERICA**
**BEFORE THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**PHOENIX DISTRICT OFFICE**
**DENVER FIELD OFFICE**

IN THE MATTER OF:

| | |
|---|---|
| Randi Freyer, | CHARGE NOS. 541-2016-01704 |
| Jo Linda Roby | 541-2017-01427 |
| Stacy Rewitzer | 541-2017-01430 |
| Renee Schwarzkopf | 541-2018-00055 |
| Melissa Hodgkins | 541-2018-00056 |
| Heather Crowe | 541-2018-02436 |
| Shannon Kiedrowski | 541-2016-01707 |
| Erin Zielinski | 541-2017-01708 |
| Brandi Beck | 541-2016-01709 |
| Trisha Hughes-Draughn | 541-2018-02426 |

Charging Parties,

v.                                   EEOC SUBPOENA NO. DE-018-020

Frontier Airlines,

Respondent.

**RESPONDENT'S PETITION TO REVOKE OR MODIFY THE SUBPOENA**
**DIRECTED TO CHARLES A. REX**

Page 1

**EXHIBIT 4**

Respondent Frontier Airlines ("Frontier" or "Respondent"), by and through its undersigned counsel and pursuant to 29 C.F.R. § 1601.16(b), hereby petitions the Area Director of the Denver Field Office of the Equal Employment Opportunity Commission ("EEOC") to revoke, in whole or in part, Subpoena No. DE-018-020 directed to Mr. Charles A. Rex ("Subpoena"). A true and correct copy of the Subpoena is included as Attachment A.

Frontier petitions to revoke the Subpoena, in whole or in part, on the grounds that it is not reasonable and is intended to harass Frontier rather than advance the EEOC's investigation of the charges of discrimination. Specifically, the EEOC should revoke the Subpoena because it unduly burdens Frontier, because the EEOC did not follow its own procedural requirements, and because the Subpoena seeks irrelevant information.

## I.      BACKGROUND

Charging Parties Randi Freyer, Jo Linda Roby, Stacy Rewitzer, Renee Schwarzkopf, Melissa Hodgkins, Heather Crowe, Shannon Kiedrowski, Erin Zielinski, Brandi Beck, and Trisha Hughes-Draughn ("Charging Parties") filed charges of discrimination against Frontier alleging that they suffered discrimination based on their sex, specifically that they suffered discrimination based on pregnancy and/or conditions related to their pregnancy and childbirth ("Charges").[1]   *See* Charges, Attachment B.   The Charging Parties assert that they were discriminated against and not accommodated while they were pregnant and/or lactating. The first Charge was filed by Randi Freyer on or about May 6, 2016. *Id.* The most recent Charge

---

[1] Mses. Hodgkins, Rewitzer, Roby, and Schwartzkopf also allege that they suffered discrimination based on pregnancy-related disabilities.

was filed by Heather Crowe on or about June 15, 2018. *Id.* Frontier employs five of the Charging Parties as pilots and five as flight attendants.

Frontier denies all allegations that it discriminated against the Charging Parties in violation of any law. Frontier has treated all of the Charging Parties lawfully, in compliance with their collective bargaining agreements, in accordance with its standard practices, and consistent with the manner in which it accommodates all pilots and flight attendants.

The EEOC has not yet concluded its investigation or made a determination. It has been investigating the Charges for over two years, since the first Charge was filed.

During the time that the EEOC has been conducting its investigation, Frontier has cooperated with the EEOC. It has maintained open communication and has attempted to provide the EEOC with the information it was seeking. In the spirit of cooperation, Frontier provided the EEOC comprehensive position statements responding to each of the Charges.[2] *See* Position Statements, Attachment C. It also has responded to multiple requests for information from the EEOC. *See* RFI Responses, Attachment D. Frontier coordinated the EEOC's requests for two on-site visits. *See* Site Visit Emails, Attachment E. During the first on-site visit on April 12, 2017, Gerardo Arellano, Frontier Senior Human Resources Manager, provided EEOC Investigator Todd Chavez a tour of Frontier's lactation room at Denver International Airport ("DIA") and a tour of a Frontier aircraft, and permitted Investigator Chavez to speak with members of Frontier's flight crew.

During the course of the second on-site visit on May 10, 2018, Mr. Arellano provided Investigator Chavez a second tour of Frontier's lactation room, and Frontier arranged for

---

[2] Position statements for the Charges filed by Ms. Hughes-Draughn and Ms. Crowe are due to the EEOC on August 21, 2018.

Investigator Chavez to interview Mr. Rex. Investigator Chavez elected not to proceed with Mr. Rex's interview when Frontier's counsel objected to Investigator Chavez administering an oath. Following the second on-site visit, the EEOC asked whether Frontier would permit it to make a recording of the inside of an aircraft. Frontier acquiesced (with respect to the body of the aircraft, but not the flight deck), but the EEOC has not yet requested a time to make the recording. *See* Aircraft Recording Emails, Attachment F.

In addition to making Mr. Rex available to the EEOC for interview, Frontier also offered to make Mr. Arellano, Kim Powers, Supervisor of Flight Operations Administration, and the Chief Pilot (formerly Joseph Peter ("JP") Thibodeau, and now Shawn Christensen), available for interviews. *See* Interview Emails, Attachment G. The EEOC did not interview Mr. Arellano, Ms. Powers, or the Chief Pilot.

Through the Subpoena, the EEOC is mostly seeking information it could have obtained through other means, including through investigative interviews. The primary purpose of the Subpoena appears to be for the EEOC to obtain deposition testimony prior to the start of litigation. Frontier objects to this abuse of the EEOC's investigative authority and requests that the Subpoena be revoked.

## II.    THE SUBPOENA

The Subpoena lists four "categories" of evidence that it will depose Mr. Rex about.[3] However, all of these categories are improper and should be revoked.

---

[3] The Subpoena states that the evidence required is:

> 1. Testimony from Charles Aaron Rex concerning his employment at Frontier Airlines including, but not limited to, his role at the company and his knowledge of Frontier Airlines' policies, procedures, and practices which reference or relate to the Americans with Disabilities Act (ADA)

Subpoena Request Number 1 should be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Through Subpoena Request Number 1, the EEOC seeks information for an unspecified timeframe about leaves of absence, accommodations, and disciplinary actions of employees other than the Charging Parties. *See* Attachment A.

Subpoena Request Number 2 should be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Subpoena Request Number 2 states, without any details or specifics, that it seeks information related to Ms. Roby and all related charges of discrimination. *See id.*

Similarly, Subpoena Request Number 3 should also be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Subpoena Request Number 3 again baldly states that it seeks information related to Ms. Freyer and all related charges of discrimination. *See id.*

Subpoena Request Number 4 should be revoked for imposing an undue burden on Frontier, because it fails to comply with the EEOC's own procedural requirements, and because it seeks irrelevant information. Subpoena Request Number 4 does not request any information;

---

of 1990, as amended, Title VII of the Civil Rights Act of 1964, as amended, including pregnancy, breastfeeding and childbirth related policies, dependability policies, maternity leave, Family Leave and Medical Act (FMLA) leave, other leaves of absence, reasonable accommodations for breastfeeding and temporary work assignment and modified work duties, disciplinary actions and job duties and descriptions.

2. Testimony related to Randi Freyer and all related charges of discrimination.

3. Testimony related to Linda Jo Roby and all related charges of discrimination.

4. The testimony shall be given under oath and it will be audio-recorded.

*See* Attachment A.

instead it simply states that the testimony must be given under oath and that it will be tape recorded. *See id.*

## III.   ARGUMENT

Pursuant to 42 U.S.C. § 2000e-9 and 29 U.S.C. § 161(1), the EEOC has the power to issue subpoenas under limited circumstances and only where: (a) it has statutory authority to conduct an investigation; (b) it follows its own procedural requirements; (c) the information sought is relevant to the investigation of the underlying charge; and (d) the request does not impose an undue burden on the responding party. *Univ. of Penn. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *EEOC v. Kronos Inc.*, 694 F.3d 351, 357 (3d Cir. 2012) (*Kronos II*); *EEOC v. Quad/Graphics Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). Furthermore, a subpoena must meet the United States' Constitution Fourth Amendment's standard of reasonableness and must not be issued to harass the party subpoenaed or otherwise reflect an abuse of process. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950); *Reich v. Mont. Sulphur Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994); *Jackson Packing Co. v. NLRB*, 204 F.2d 842, 844 (5th Cir. 1953).

Applying these standards, Frontier objects to every category of information sought in the Subpoena (numbered 1-4) as unduly burdensome and irrelevant. Additionally, the EEOC has also failed to follow its own procedural standards in issuing the Subpoena.

### A.   The Subpoena Imposes An Undue Burden on Frontier by Seeking Unregulated Depositions Prior to Litigation.

The Subpoena requires Mr. Rex to submit to a deposition.[4]   *See* EEOC Compliance

---

[4] Subpoena Request Number 4 states that Mr. Rex's testimony "shall be given under oath and it will be audio-recorded." *See* Attachment A.

Manual ("Manual") § 24.9 ("Oral testimony is generally taken by deposition. A deposition is a process for securing written or oral testimony given by a witness under oath . . ."). Permitting the EEOC to depose Mr. Rex at this time will allow the EEOC to circumvent the rules governing discovery and will prejudice Frontier in future litigation. Courts utilize an entire system of rules pertaining to discovery, and depositions in particular, to protect parties from abuses during the discovery process. *See* Fed. R. Civ. P. 26 – 37. During litigation, there are restrictions on the number of depositions a party can take, the number of times a party can depose the same person, the length of each deposition, the type of information that can be sought from each deponent, how the testimony is recorded, etc. *See* Fed. R. Civ. P. 30. Here, the EEOC is trying to end-run those rules by taking preliminary depositions that can be used in future litigation proceedings.

Frontier already offered the EEOC an on-site interview of Mr. Rex to allow it to obtain any information necessary for its investigation, only to have the EEOC reject the offer and issue the Subpoena. This makes it clear that the only purpose for the Subpoena is to obtain deposition testimony. A court will not enforce an EEOC request if it is made for an illegitimate purpose, excessively burdensome, or inconsistent with administrative procedural requirements. *See Univ. of Penn.*, 493 U.S. at 191; *Kronos Inc.*, 694 F.3d at 362; *Quad/Graphics, Inc.*, 63 F.3d at 645; *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc* ), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994).

The EEOC has not issued a determination; therefore it is still investigating the Charges. The investigation is a fact finding process where the investigator can make credibility determinations about witnesses and the information they provide. There is no need to record

testimony under oath in order to investigate whether there is probable cause to believe discrimination occurred.[5]   In fact, the EEOC's own guidance discourages recording statements during the investigative process.   Manual § 23.10.   And here, as discussed below, Frontier has already offered the EEOC the relevant information it seeks through the Subpoena.   The Subpoena does not seek any information that Frontier has refused to provide to the EEOC.   The EEOC is unable to prove that the Subpoena will realistically "advance its investigations" as required by the Tenth Circuit.   *EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 937 (10th Cir. 2017).   The only apparent purpose for the EEOC to depose Mr. Rex at this time is to create a record that can be used for impeachment in later litigation.   This is an abuse of the EEOC's investigative authority.

Frontier anticipates that if this matter proceeds to litigation, the Charging Parties will take depositions during the discovery process.   If the EEOC litigates this matter, it could then depose Mr. Rex for a second time, getting essentially a second bite at the apple.[6]   Frontier will not have the same opportunity to take multiple depositions of the Charging Parties.   The EEOC is already attempting to take two preliminary 30(b)(6) type depositions by requiring both Mr. Rex and Mr. Arellano to testify about Frontier's policies, procedures, and practices.   In litigation, this information would be requested from Frontier's representative during a 30(b)(6) deposition.   Frontier would designate a representative most equipped to provide the requested information.

---

[5] For instance, in the criminal context, law enforcement regularly takes witness statements (not under oath) and uses the information it finds credible to assist in its investigation.   The EEOC has not articulated what additional information it expects to gain by recording Mr. Rex's interview and putting him under oath.

[6] Even if the EEOC does not litigate this matter, the Charging Parties will likely be able to obtain the recording of Mr. Rex's deposition through a FOIA request to the EEOC and use the recording for impeachment purposes.   If the Subpoena is not revoked and Mr. Rex is deposed, Frontier insists that the EEOC agree to refrain from deposing Mr. Rex a second time in any subsequent litigation.

Thorough the Subpoena, the EEOC is attempting to circumvent the protections offered to a corporate defendant during litigation.

The Subpoena constitutes an impermissible harassment of Frontier in violation of the Fourth Amendment. *See United States v. Powell*, 379 U.S. 48, 58 (1964). Complying with the Subpoena will impose an undue burden on Frontier to prepare Mr. Rex for a litigation deposition multiple times. The EEOC should revoke the Subpoena to prevent these abuses of the investigatory and discovery processes and because the Subpoena imposes an undue burden on Frontier.

## B.     The EEOC Failed To Follow Its Own Procedures.

Contrary to its own guidance, the EEOC did not seek Frontier's cooperation to obtain the information necessary for its investigation or attempt to use less drastic means of obtaining the same information. The EEOC's failure to comply with its own investigatory procedures lends credence to Frontier's reasonable belief that the Subpoena is intended to harass Frontier rather than contribute to the investigation. Such an abuse of power constitutes a reason to revoke the Subpoena. *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844.

### 1.     *The EEOC did not meaningfully seek Frontier's cooperation.*

The Subpoena should be revoked in its entirety because the EEOC did not make a good faith effort to obtain Frontier's cooperation prior to issuing the Subpoena as required by the EEOC Compliance Manual. Manual § 24.1(a). Frontier has been reasonable and cooperative with the EEOC throughout the two plus years that the EEOC has been investigating the Charges. Frontier has submitted detailed position statements, has responded to multiple requests for

information, has allowed two site inspections including one inside an aircraft, has facilitated interviews with its employees, has offered the EEOC the opportunity to film inside an aircraft, and has kept open lines of communication throughout the investigation process.

Relevant to the Subpoena, Frontier already cooperated with the EEOC to enable Investigator Chavez's interview of Mr. Rex. Investigator Chavez met with Mr. Rex but failed to conduct an interview when Frontier's counsel objected to Investigator Chavez administering an oath. Despite Frontier's record of cooperation, the EEOC has failed to articulate why Mr. Rex needs to submit to a recorded deposition under oath. This is contrary to the EEOC's guidance. *See id.* ("Explain why the data is required . . ."). Rather than explain to Frontier why a deposition is necessary or why an on-site investigative interview is insufficient, the EEOC simply issued the Subpoena to depose Mr. Rex. Without an explanation of why the EEOC believes a deposition is necessary, Frontier can only assume that it is being taken with an eye towards future litigation.

Frontier was also cooperative in trying to help the EEOC obtain necessary information about Frontier's policies, procedures, and practices. Frontier repeatedly informed the EEOC that its Chief Pilot is the person most knowledgeable, and the witness most qualified to speak on the topic. *See* Attachment G. Frontier volunteered multiple times to make the Chief Pilot available for an interview. *See id.* Frontier respectfully requested that an interview of the Chief Pilot be conducted first, so that the EEOC can determine if further interviews on the topic are actually necessary.[7] Nevertheless, the EEOC refused to interview the Chief Pilot. Instead, the EEOC

---

[7] This is a completely reasonable ask and another example of Frontier's attempts to cooperate with the EEOC. Frontier did not suggest that it would not permit additional interviews on the topic; it just asked that the EEOC interview the most knowledgeable person first and then assess what further interviews were needed on that

then requested contact information for every captain employed by Frontier. *See* Pilot Contact Emails, Attachment H. Investigator Chavez informed Frontier that he wanted to be able to contact any pilot and interview them at random. *Id.* Frontier refused to provide the EEOC the contact information for every captain, but again recommended that the EEOC interview the Chief Pilot to obtain some of the information it is seeking. *Id.* The EEOC again refused Frontier's reasonable attempts at cooperation.

Frontier's willingness to have Mr. Rex submit to an interview and the EEOC's failure to communicate with and/or attempt to cooperate with Frontier, demonstrate that the EEOC's exercise of the subpoena power in this situation is improper and unnecessary.

### 2.    *The EEOC Did Not Use Other Available Means to Obtain the Information Sought.*

The EEOC Compliance Manual provides that "a subpoena is used when a respondent fails to produce or provide access to evidence and there is not enough evidence to make a finding." Manual § 24.1(f). It further mandates that "a subpoena should only be issued when compulsory process is necessary." *Id.* at § 24.4. An investigator is expected to only use subpoenas "after other investigative methods have been attempted." *Id.* at § 24.1.

The EEOC has not previously asked Frontier to provide certain of the subpoenaed information and Frontier has already offered to provide the EEOC with the remaining information. Thus, a compulsory process is not required and the Subpoena is an unnecessary burden on Frontier.

Subpoena Request Numbers 2 and 3 request – for the first time – testimony related to

---

particular topic. This could help prevent both Frontier and the EEOC from wasting time interviewing multiple individuals about information that the Chief Pilot could provide in one interview.

Ms. Freyer and all related charges of discrimination, and testimony related to Ms. Roby and all related charges of discrimination. As discussed below, these requests are ambiguous and it is not clear to Frontier what information the EEOC is seeking. Regardless, this information has not previously been requested at any time in the past two years while this investigation has been ongoing. Frontier never indicated to the EEOC that it was unwilling to provide relevant information related to the charges filed by Ms. Freyer and Ms. Roby. However, rather than engage in a discussion regarding these requests, the EEOC simply issued the Subpoena to obtain the information.

Regarding Frontier's policies, procedures, and practices, as discussed above, Frontier has repeatedly volunteered to make the Chief Pilot available for an interview. Frontier has informed the EEOC that its Chief Pilot is the most knowledgeable and qualified person to speak on the topic. However, the EEOC has refused to interview the Chief Pilot and obtain the information it now seeks in Subpoena Request Number 1. The EEOC also has not provided Frontier any reason as to why it believes the Chief Pilot is not qualified to provide the information the EEOC was seeking.

Frontier has also already made Mr. Rex available to the EEOC for an interview about his employment, as now requested by Subpoena Request Number 1. Frontier facilitated a meeting between Investigator Chavez and Mr. Rex. Investigator Chavez met with Mr. Rex but elected not to interview him when Frontier did not permit Investigator Chavez to administer an oath. Investigator Chavez could still have interviewed Mr. Rex to obtain the information he allegedly needed for the investigation and later determined if he needed a subsequent deposition of Mr. Rex under oath. Instead, Investigator Chavez elected to end the meeting without asking

Mr. Rex for any of the information that he believed was essential to the EEOC's investigation.[8] The EEOC refused to discuss with Frontier why an oath was necessary during the fact-finding investigation process.

Here, Frontier has attempted to provide the EEOC access to the evidence it was seeking but the EEOC was not interested in obtaining the information. It is clear by the EEOC's insistence that the information only be provided by particular individuals through recorded deposition testimony, that the EEOC is not seeking evidence to help it make a finding, but rather, it is trying to gather improper impeachment testimony.[9] There is no need for a compulsory process when Frontier has offered access to the information being sought.

In the absence of such reasonable and good faith efforts by the EEOC to obtain compliance without compulsory process, the Subpoena constitutes a form of harassment and intimidation. A court will not look favorably upon the EEOC propounding subpoenas without first attempting to obtain the information requested through alternate means. *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844. This is particularly true when Frontier has tried to cooperate with the EEOC and has offered to provide the requested information.

---

[8] Aside from it being a waste of Frontier's time and resources to arrange to escort Investigator Chavez through DIA and arrange for Mr. Rex to be available for an interview, it is also a waste of EEOC (and taxpayer) resources to have Investigator Chavez come to DIA, go through security, meet with Mr. Rex and then fail to obtain any information needed for the investigation simply because he could not put Mr. Rex under oath.

[9] As discussed above, there is no legitimate purpose to require interviews be given under oath and that they be recorded. In fact the EEOC's own guidance discourages recording interviews during the investigative process. Manual § 23.10.

3. *The Subpoena seeks to improperly record Mr. Rex's deposition in violation of the EEOC's own procedural requirements.*

The EEOC Compliance Manual states that if a deposition is required, it should be recorded by "either a stenographer or a court reporter." Manual § 24.9(b). It further states that the transcript of the deposition should then be provided to the witness "to read, change, and sign." *Id.* at § 24.9(e)(1). The Subpoena indicates that the EEOC intends only to audio-record the deposition. *See* Attachment A. This breaches the EEOC's own protocol and is an improper method of recording a deposition. Frontier insists that if the Subpoena is not revoked and a deposition proceeds, that the EEOC comply with its own guidance and use either a stenographer or court reporter to record the deposition and allow Mr. Rex the opportunity to read, change, and sign the deposition transcript.

Despite Frontier's ongoing willingness to cooperate with the EEOC, both in spirit and in act, the EEOC has elected to forego such efforts and its own procedures for seeking information. For these reasons, the Subpoena should be revoked in its entirety.

## C.   The Information Sought in the Subpoena Is Not Relevant To The Investigation Of The Charges.

The EEOC's statutory investigative authority is not plenary; the EEOC is entitled to access only evidence "relevant to the charge under investigation." 42 U.S.C. §§ 2000e-8(a). In this regard, the EEOC's investigatory power is anchored to the charge of discrimination, and courts will be careful not to construe the charge and relevance requirements so broadly as to confer "unconstrained investigative authority" upon the EEOC. *Shell Oil*, 466 U.S. at 64-65; *see also EEOC v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002). The relevance requirement "is designed to cabin the EEOC's authority and prevent fishing expeditions." *Id.* (quotation

marks omitted).  The EEOC bears the burden of demonstrating relevance.  *See EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001).

The EEOC has failed to meet its burden of demonstrating the relevance of Subpoena Request Numbers 1 through 4 because they are overbroad in scope, seek confidential information, and do not request information that will further the investigation.

Subpoena Request Numbers 2 and 3 are overbroad as to their subject matter because they lack sufficient detail and call for speculation.  The ambiguous requests simply require testimony related to Ms. Freyer and Ms. Roby and all related charges of discrimination.  Both requests are too indefinite and fail to describe with reasonable particularity the topics on which information is sought.   They also do not specify reasonable time restrictions.   Accordingly, the requests encompass irrelevant information.

Subpoena Request Number 1 is overbroad because it does not provide reasonable temporal or subject matter limitations.  The request does not contain any time limitations and therefore seeks information that is not relevant to the Charges.  It is also overbroad as to subject matter because it seeks confidential information, the disclosure of which could infringe upon a third-party's privacy rights.   The EEOC's investigatory powers "are subject to recognized privileges and protections."  *United States EEOC v. Am. Apparel, Inc.*, 327 Fed. Appx. 11, 12 (9th Cir. 2009).

Subpoena Request Number 1 requests information about unspecified employees' leaves of absence, accommodations, and disciplinary actions.  It is overbroad because it generally seeks information on current and former Frontier employees, regardless of the type of leave of absence they took, the reason for their leave, the type of accommodation provided, the reason for the

accommodation, the type of disciplinary action they received, or the reason for the disciplinary action.  Charging Parties' allegations concern pregnancy and related conditions, so information on all employees who have taken leave, been accommodated, or been subject to disciplinary action is not material to the EEOC's investigation.  *EEOC v. UPS*, 2006 U.S. Dist. LEXIS 95339, at *7 (D. Minn. 2006) ("the EEOC must show that its investigation is for a legitimate purpose authorized by Congress and that the documents subpoenaed are relevant to its inquiry."); *United Air Lines*, 287 F.3d at 654 (finding a subpoena issued by the EEOC unenforceable because the information sought went beyond the underlying charge by requesting "extensive information" about individuals who were not similarly situated to the charging party).

Furthermore, employees have a privacy interest in their personnel information, particularly their personal health information.[10]  Subpoena Request Number 1 infringes on the privacy interests of Frontier's other employees who are not similarly situated to the Charging Parties. *See EEOC v. Loyola Univ. Med. Ctr.*, 823 F. Supp. 2d 835, 839 (N.D. Ill. 2011) (finding unenforceable a subpoena issued by the EEOC that sought "sensitive" information for employees who did not share similar positions, duties, or supervisors as the charging party).  There is a strong public policy against disclosure of employee information.  Federal courts have consistently refused to order broad discovery of personnel information pertaining to non-party employees. *See Miller v. Federal Express Corp.*, 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (because of the privacy interests involved, personnel records should not be ordered produced except upon a compelling showing of relevance).

---

[10] Many leaves of absences and requests for accommodations are for health related reasons.

In this situation, permitting the EEOC to depose Mr. Rex about other employees' leaves of absence, accommodations, and disciplinary actions carries with it the additional risk that such information could become public. If this matter proceeds to litigation, there is a strong likelihood that the Charging Parties will submit FOIA requests to the EEOC to obtain information pertaining to their Charges. The audio-recording of Mr. Rex's deposition could be disclosed in response to such FOIA requests.[11] Several of the Charging Parties are current Frontier employees and could end up receiving sensitive information about their colleagues.[12] Any argument for relevance is outweighed by these objections. *See EEOC v. ABM Janitorial-Midwest, Inc.*, 671 F. Supp. 2d 999, 1006 (N.D. Ill. 2009) (balancing the EEOC's interest in "marginally relevant information" against "the substantial challenges of compliance . . .").

Subpoena Request Number 4 will not provide the EEOC with any information that will help the EEOC with its investigation. Subpoena Request Number 4 does not seek any information. It simply creates a requirement that Mr. Rex submit to a deposition by the EEOC. As discussed above, the EEOC has failed to explain why a deposition is necessary or how it will further the investigation. *See TriCore Reference Labs.*, 849 F.3d at 937 ("To show subpoenaed information is relevant, the EEOC must show it has a realistic expectation rather than an idle hope that the information requested will advance its investigation.") (internal citation omitted). It is apparent that the EEOC is not actually interested in the information Mr. Rex has for investigative purposes; the motive behind deposing Mr. Rex appears to be to prepare for litigation.

---

[11] An investigator's notes from an interview are generally protected from FOIA requests. *See* https://www.eeoc.gov/eeoc/foia/section83.cfm. However, an audio-recording of a deposition may not receive the same protection because it does not necessarily contain the impressions of the investigator.

[12] An audio-recorded deposition will be difficult to redact.

Because Subpoena Request Numbers 1 through 4 seek irrelevant information, the EEOC should revoke those requests and the Subpoena in its entirety.

## IV.    CONCLUSION

For all of the foregoing reasons, Frontier respectfully urges the Commission to revoke the Subpoena in its entirety.

Dated this 13th day of August, 2018.

_____
Danielle Kitson
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Tel:  303.629.6200 | Fax:  303.629.0200
Email:  dkitson@littler.com

Attorney for Respondent Frontier Airlines

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing was served via FedEx on August 13, 2018.

Elizabeth Cadle, Phoenix District Director
Equal Employment Opportunity Commission
303 E. 17th Avenue, Ste. 410
Denver, CO 80203

Todd Chavez, Federal Investigator
Equal Employment Opportunity Commission
303 E. 17th Avenue, Ste. 410
Denver, CO 80203

Danielle Kitson

**UNITED STATES OF AMERICA**
**BEFORE THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**PHOENIX DISTRICT OFFICE**
**DENVER FIELD OFFICE**

IN THE MATTER OF:

| | |
|---|---|
| Randi Freyer, | CHARGE NOS. 541-2016-01704 |
| Jo Linda Roby | **541-2017-01427** |
| Stacy Rewitzer | 541-2017-01430 |
| Renee Schwarzkopf | 541-2018-00055 |
| Melissa Hodgkins | 541-2018-00056 |
| Heather Crowe | **541-2018-02436** |
| Shannon Kiedrowski | 541-2016-01707 |
| Erin Zielinski | 541-2017-01708 |
| Brandi Beck | 541-2016-01709 |
| Trisha Hughes-Draughn | 541-2018-02426 |

Charging Parties,

v.                                           EEOC SUBPOENA NO. DE-018-021

Frontier Airlines,

Respondent.

## RESPONDENT'S PETITION TO REVOKE OR MODIFY THE SUBPOENA DIRECTED TO GERARDO ARELLANO

Respondent Frontier Airlines ("Frontier" or "Respondent"), by and through its undersigned counsel and pursuant to 29 C.F.R. § 1601.16(b), hereby petitions the Area Director of the Denver Field Office of the Equal Employment Opportunity Commission ("EEOC") to revoke, in whole or in part, Subpoena No. DE-018-021 directed to Mr. Gerardo Arellano ("Subpoena"). A true and correct copy of the Subpoena is included as Attachment A.

Frontier petitions to revoke the Subpoena, in whole or in part, on the grounds that it is not reasonable and is intended to harass Frontier rather than advance the EEOC's investigation of the charges of discrimination. Specifically, the EEOC should revoke the Subpoena because it unduly burdens Frontier, because the EEOC did not follow its own procedural requirements, and because the Subpoena seeks irrelevant information.

## I.   BACKGROUND

Charging Parties Randi Freyer, Jo Linda Roby, Stacy Rewitzer, Renee Schwarzkopf, Melissa Hodgkins, Heather Crowe, Shannon Kiedrowski, Erin Zielinski, Brandi Beck, and Trisha Hughes-Draughn ("Charging Parties") filed charges of discrimination against Frontier alleging that they suffered discrimination based on their sex, specifically that they suffered discrimination based on pregnancy and/or conditions related to their pregnancy and childbirth ("Charges").[1] *See* Charges, Attachment B. The Charging Parties assert that they were discriminated against and not accommodated while they were pregnant and/or lactating. The first Charge was filed by Randi Freyer on or about May 6, 2016. *Id.* The most recent Charge

---

[1] Mses. Hodgkins, Rewitzer, Roby, and Schwartzkopf also allege that they suffered discrimination based on pregnancy-related disabilities.

was filed by Heather Crowe on or about June 15, 2018. *Id.* Frontier employs five of the Charging Parties as pilots and five as flight attendants.

Frontier denies all allegations that it discriminated against the Charging Parties in violation of any law. Frontier has treated all of the Charging Parties lawfully, in compliance with their collective bargaining agreements, in accordance with its standard practices, and consistent with the manner in which it accommodates all pilots and flight attendants.

The EEOC has not yet concluded its investigation or made a determination. It has been investigating the Charges for over two years, since the first Charge was filed.

During the time that the EEOC has been conducting its investigation, Frontier has cooperated with the EEOC. It has maintained open communication and has attempted to provide the EEOC with the information it was seeking. In the spirit of cooperation, Frontier provided the EEOC comprehensive position statements responding to each of the Charges.[2] *See* Position Statements, Attachment C. It also has responded to multiple requests for information from the EEOC. *See* RFI Responses, Attachment D. Frontier coordinated the EEOC's requests for two on-site visits.[3] *See* Site Visit Emails, Attachment E. During the first on-site visit on April 12, 2017, Gerardo Arellano, Frontier Senior Human Resources Manager, provided EEOC Investigator Todd Chavez a tour of Frontier's lactation room at Denver International Airport ("DIA") and a tour of a Frontier aircraft, and permitted Investigator Chavez to speak with members of Frontier's flight crew.

---

[2] Position statements for the Charges filed by Ms. Hughes-Draughn and Ms. Crowe are due to the EEOC on August 21, 2018.
[3] Although it was Investigator Chavez that attended these on-site visits, Investigator Justin Moore could also have requested to attend the site visits. It would reduce the burden on Frontier to have both investigators conduct site visits simultaneously. Regardless, Investigator Moore has not separately requested a site visit. It is Frontier's understanding that the two investigators are collaborating and sharing information.

During the course of the second on-site visit on May 10, 2018, Mr. Arellano provided Investigator Chavez a second tour of Frontier's lactation room, and Frontier arranged for Investigator Chavez to interview Charles Aaron Rex, Assistant Chief Pilot.[4] Investigator Chavez elected not to proceed with Mr. Rex's interview when Frontier's counsel objected to Investigator Chavez administering an oath. Following the second on-site visit, EEOC Investigator Justin Moore asked whether Frontier would permit it to make a recording of the inside of an aircraft. Frontier acquiesced (with respect to the body of the aircraft, but not the flight deck), but the EEOC has not yet requested a time to make the recording. *See* Aircraft Recording Emails, Attachment F.

Frontier also made Mr. Arellano available to Investigator Moore to interview. *See* Interview Emails, Attachment G. However, the day before the interview, Investigator Moore informed Frontier that he was ill and would not be able to conduct the interview. *Id.* Mr. Arellano was only interested in rescheduling the interview if Frontier permitted him to record the interview. *Id.*

In addition to making Mr. Rex and Mr. Arellano available to the EEOC for interview, Frontier also offered to make Kim Powers, Supervisor of Flight Operations Administration, and the Chief Pilot (formerly Joseph Peter ("JP") Thibodeau, and now Shawn Christensen), available for interviews. *Id.* The EEOC did not interview Ms. Powers, or the Chief Pilot.

Through the Subpoena, the EEOC is mostly seeking information it could have obtained through other means, including through investigative interviews. The primary purpose of the

---

[4] Mr. Arellano was present for both site visits. Investigator Chavez could have asked to speak with Mr. Arellano during either site visit, he did not do so. Investigator Moore could have attended either site visit and asked to speak with Mr. Arellano, he did not do so.

Subpoena appears to be for the EEOC to obtain deposition testimony prior to the start of litigation. Frontier objects to this abuse of the EEOC's investigative authority and requests that the Subpoena be revoked.

## II.    THE SUBPOENA

The Subpoena lists four "categories" of evidence that it will depose Mr. Arellano about.[5] However, all of these categories are improper and should be revoked.

Subpoena Request Number 1 should be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Through Subpoena Request Number 1, the EEOC seeks information for an unspecified timeframe about leaves of absence, accommodations, and disciplinary actions of employees other than the Charging Parties. *See* Attachment A.

Subpoena Request Number 2 should be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Subpoena Request Number 2 states, without any details or specifics, that it seeks information related to Ms. Roby and all related charges of discrimination. *See id.*

---

[5] The Subpoena states that the evidence required is:

> 1. Testimony from Gerardo (Jerry) Arellano, Senior Employee Relations Manager of Frontier Airlines, concerning his employment at Frontier Airlines including, but not limited to, his role at the company and his knowledge of Frontier Airlines' policies, procedures, and practices which reference or relate to the Americans with Disabilities Act (ADA) of 1990, as amended, Title VII of the Civil Rights Act of 1964, as amended, including pregnancy, breastfeeding and childbirth related policies, dependability policies, maternity leave, Family Leave and Medical Act (FMLA) leave, other leaves of absence, reasonable accommodations for breastfeeding and temporary work assignment and modified work duties, disciplinary actions and job duties and descriptions.
> 2. Testimony related to Randi Freyer and all related charges of discrimination.
> 3. Testimony related to Linda Jo Roby and all related charges of discrimination.
> 4. The testimony shall be given under oath and it will be audio-recorded.

*See* Attachment A.

Similarly, Subpoena Request Number 3 should also be revoked because it fails to comply with the EEOC's own procedural requirements and seeks irrelevant information. Subpoena Request Number 3 again baldly states that it seeks information related to Ms. Freyer and all related charges of discrimination. *See id.*

Subpoena Request Number 4 should be revoked for imposing an undue burden on Frontier, because it fails to comply with the EEOC's own procedural requirements, and because it seeks irrelevant information. Subpoena Request Number 4 does not request any information; instead it simply states that the testimony must be given under oath and that it will be tape recorded. *See id.*

## III.  ARGUMENT

Pursuant to 42 U.S.C. § 2000e-9 and 29 U.S.C. § 161(1), the EEOC has the power to issue subpoenas under limited circumstances and only where: (a) it has statutory authority to conduct an investigation; (b) it follows its own procedural requirements; (c) the information sought is relevant to the investigation of the underlying charge; and (d) the request does not impose an undue burden on the responding party. *Univ. of Penn. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *EEOC v. Kronos Inc.*, 694 F.3d 351, 357 (3d Cir. 2012) (*Kronos II*); *EEOC v. Quad/Graphics Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). Furthermore, a subpoena must meet the United States' Constitution Fourth Amendment's standard of reasonableness and must not be issued to harass the party subpoenaed or otherwise reflect an abuse of process. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950); *Reich v. Mont. Sulphur Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994); *Jackson Packing Co. v. NLRB*, 204 F.2d 842, 844 (5th Cir. 1953).

Applying these standards, Frontier objects to every category of information sought in the Subpoena (numbered 1-4) as unduly burdensome and irrelevant. Additionally, the EEOC has also failed to follow its own procedural standards in issuing the Subpoena.

**A.      The Subpoena Imposes An Undue Burden on Frontier by Seeking Unregulated Depositions Prior to Litigation.**

The Subpoena requires Mr. Arellano to submit to a deposition.[6] *See* EEOC Compliance Manual ("Manual") § 24.9 ("Oral testimony is generally taken by deposition. A deposition is a process for securing written or oral testimony given by a witness under oath . . ."). Permitting the EEOC to depose Mr. Arellano at this time will allow the EEOC to circumvent the rules governing discovery and will prejudice Frontier in future litigation. Courts utilize an entire system of rules pertaining to discovery, and depositions in particular, to protect parties from abuses during the discovery process. *See* Fed. R. Civ. P. 26 – 37. During litigation, there are restrictions on the number of depositions a party can take, the number of times a party can depose the same person, the length of each deposition, the type of information that can be sought from each deponent, how the testimony is recorded, etc. *See* Fed. R. Civ. P. 30. Here, the EEOC is trying to end-run those rules by taking preliminary depositions that can be used in future litigation proceedings.

Frontier already offered the EEOC an interview of Mr. Arellano to allow it to obtain any information necessary for its investigation, only to have the EEOC reject the offer and issue the Subpoena. This makes it clear that the only purpose for the Subpoena is to obtain deposition testimony. A court will not enforce an EEOC request if it is made for an illegitimate purpose,

---

[6] Subpoena Request Number 4 states that Mr. Arellano's testimony "shall be given under oath and it will be audio-recorded." *See* Attachment A.

excessively burdensome, or inconsistent with administrative procedural requirements. *See Univ. of Penn.*, 493 U.S. at 191; *Kronos Inc.*, 694 F.3d at 362; *Quad/Graphics, Inc.*, 63 F.3d at 645; *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc* ), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994).

The EEOC has not issued a determination; therefore it is still investigating the Charges. The investigation is a fact finding process where the investigator can make credibility determinations about witnesses and the information they provide. There is no need to record testimony under oath in order to investigate whether there is probable cause to believe discrimination occurred.[7]  In fact, the EEOC's own guidance discourages recording statements during the investigative process. Manual § 23.10. And here, as discussed below, Frontier has already offered the EEOC the relevant information it seeks through the Subpoena.  The Subpoena does not seek any information that Frontier has refused to provide to the EEOC.  The EEOC is unable to prove that the Subpoena will realistically "advance its investigations" as required by the Tenth Circuit. *EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 937 (10th Cir. 2017).  The only apparent purpose for the EEOC to depose Mr. Arellano at this time is to create a record that can be used for impeachment in later litigation.  This is an abuse of the EEOC's investigative authority.

Frontier anticipates that if this matter proceeds to litigation, the Charging Parties will take depositions during the discovery process.  If the EEOC litigates this matter, it could then depose

---

[7] For instance, in the criminal context, law enforcement regularly takes witness statements (not under oath) and uses the information it finds credible to assist in its investigation.  The EEOC has not articulated what additional information it expects to gain by recording Mr. Arellano's interview and putting him under oath.

Mr. Arellano for a second time, getting essentially a second bite at the apple.[8]  Frontier will not have the same opportunity to take multiple depositions of the Charging Parties.  The EEOC is already attempting to take two preliminary 30(b)(6) type depositions by requiring both Mr. Rex and Mr. Arellano to testify about Frontier's policies, procedures, and practices.  In litigation, this information would be requested from Frontier's representative during a 30(b)(6) deposition.  Frontier would designate a representative most equipped to provide the requested information.  Thorough the Subpoena, the EEOC is attempting to circumvent the protections offered to a corporate defendant during litigation.

The Subpoena constitutes an impermissible harassment of Frontier in violation of the Fourth Amendment.  *See United States v. Powell*, 379 U.S. 48, 58 (1964).  Complying with the Subpoena will impose an undue burden on Frontier to prepare Mr. Arellano for a litigation deposition multiple times.  The EEOC should revoke the Subpoena to prevent these abuses of the investigatory and discovery processes and because the Subpoena imposes an undue burden on Frontier.

**B.      The EEOC Failed To Follow Its Own Procedures.**

Contrary to its own guidance, the EEOC did not seek Frontier's cooperation to obtain the information necessary for its investigation or attempt to use less drastic means of obtaining the same information.  The EEOC's failure to comply with its own investigatory procedures lends credence to Frontier's reasonable belief that the Subpoena is intended to harass Frontier rather than contribute to the investigation.  Such an abuse of power constitutes a reason to revoke the

---

[8] Even if the EEOC does not litigate this matter, the Charging Parties will likely be able to obtain the recording of Mr. Arellano's deposition through a FOIA request to the EEOC and use the recording for impeachment purposes.  If the Subpoena is not revoked and Mr. Arellano is deposed, Frontier insists that the EEOC agree to refrain from deposing Mr. Arellano a second time in any subsequent litigation.

Subpoena.  *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844.

### 1.  *The EEOC did not meaningfully seek Frontier's cooperation.*

The Subpoena should be revoked in its entirety because the EEOC did not make a good faith effort to obtain Frontier's cooperation prior to issuing the Subpoena as required by the EEOC Compliance Manual.  Manual § 24.1(a).  Frontier has been reasonable and cooperative with the EEOC throughout the two plus years that the EEOC has been investigating the Charges. Frontier has submitted detailed position statements, has responded to multiple requests for information, has allowed two site inspections including one inside an aircraft, has facilitated interviews with its employees, has offered the EEOC the opportunity to film inside an aircraft, and has kept open lines of communication throughout the investigation process.

Relevant to the Subpoena, Frontier already cooperated with the EEOC to enable Investigator Moore's interview of Mr. Arellano.  Investigator Moore was scheduled to interview Mr. Arellano but was unable to do so because he fell ill.  Frontier was cooperative and offered to reschedule the interview.  However, Investigator Moore failed to reschedule the interview when Frontier's counsel objected to Investigator Moore recording the interview.  *See* Interview Emails, Attachment G.  Despite Frontier's record of cooperation, the EEOC has failed to articulate why Mr. Arellano needs to submit to a recorded deposition under oath.  This is contrary to the EEOC's guidance.  *See id.* ("Explain why the data is required . . .").  Rather than explain to Frontier why a deposition is necessary or why an investigative interview is insufficient, the EEOC simply issued the Subpoena to depose Mr. Arellano.  Without an explanation of why the

EEOC believes a deposition is necessary, Frontier can only assume that it is being taken with an eye towards future litigation.

Frontier was also cooperative in trying to help the EEOC obtain necessary information about Frontier's policies, procedures, and practices. Frontier repeatedly informed the EEOC that its Chief Pilot is the person most knowledgeable, and the witness most qualified to speak on the topic. *See* Attachment G. Frontier volunteered multiple times to make the Chief Pilot available for an interview. *See id.* Frontier respectfully requested that an interview of the Chief Pilot be conducted first, so that the EEOC can determine if further interviews on the topic are actually necessary.[9] Nevertheless, the EEOC refused to interview the Chief Pilot. Instead, the EEOC then requested contact information for every captain employed by Frontier. *See* Captain Contact Emails, Attachment H. Investigator Chavez informed Frontier that he wanted to be able to contact any captain and interview them at random. *Id.* Frontier refused to provide the EEOC the contact information for every captain, but again recommended that the EEOC interview the Chief Pilot to obtain some of the information it is seeking. *Id.* The EEOC again refused Frontier's reasonable attempts at cooperation.

Frontier's willingness to have Mr. Arellano submit to an interview and the EEOC's failure to communicate with and/or attempt to cooperate with Frontier, demonstrate that the EEOC's exercise of the subpoena power in this situation is improper and unnecessary.

---

[9] This is a completely reasonable ask and another example of Frontier's attempts to cooperate with the EEOC. Frontier did not suggest that it would not permit additional interviews on the topic; it just asked that the EEOC interview the most knowledgeable person first and then assess what further interviews were needed on that particular topic. This could help prevent both Frontier and the EEOC from wasting time interviewing multiple individuals about information that the Chief Pilot could provide in one interview.

**2.**      ***The EEOC Did Not Use Other Available Means to Obtain the Information Sought.***

The EEOC Compliance Manual provides that "a subpoena is used when a respondent fails to produce or provide access to evidence and there is not enough evidence to make a finding."  Manual § 24.1(f).  It further mandates that "a subpoena should only be issued when compulsory process is necessary."  *Id.* at § 24.4.  An investigator is expected to only use subpoenas "after other investigative methods have been attempted."  *Id.* at § 24.1.

The EEOC has not previously asked Frontier to provide certain of the subpoenaed information and Frontier has already offered to provide the EEOC with the remaining information.  Thus, a compulsory process is not required and the Subpoena is an unnecessary burden on Frontier.

Subpoena Request Numbers 2 and 3 request – for the first time – testimony related to Ms. Freyer and all related charges of discrimination, and testimony related to Ms. Roby and all related charges of discrimination.  As discussed below, these requests are ambiguous and it is not clear to Frontier what information the EEOC is seeking.  Regardless, this information has not previously been requested at any time in the past two years while this investigation has been ongoing.  Frontier never indicated to the EEOC that it was unwilling to provide relevant information related to the charges filed by Ms. Freyer and Ms. Roby.  However, rather than engage in a discussion regarding these requests, the EEOC simply issued the Subpoena to obtain the information.

Regarding Frontier's policies, procedures, and practices, as discussed above, Frontier has repeatedly volunteered to make the Chief Pilot available for an interview.  Frontier has informed

the EEOC that its Chief Pilot is the most knowledgeable and qualified person to speak on the topic. However, the EEOC has refused to interview the Chief Pilot and obtain the information it now seeks in Subpoena Request Number 1. The EEOC also has not provided Frontier any reason as to why it believes the Chief Pilot is not qualified to provide the information the EEOC was seeking.

Frontier has also already made Mr. Arellano available to the EEOC for an interview about his employment, as now requested by Subpoena Request Number 1. Frontier facilitated an interview between Investigator Moore and Mr. Arellano. When Investigator Moore was unable to meet with Mr. Arellano because of an illness, Frontier clearly informed Investigator Moore that it would cooperate in rescheduling the interview. Rather than simple reschedule the interview, Investigator Moore insisted that the interview be recorded. When Frontier objected to Investigator Moore recording the interview, Investigator Moore failed to reschedule the interview. Investigator Moore could still have interviewed Mr. Arellano to obtain the information he allegedly needed for the investigation and later determined if he needed a subsequent recorded deposition of Mr. Arellano. Instead, Investigator Moore elected to end communications with Frontier regarding rescheduling Mr. Arellano's interview without asking Mr. Arellano for any of the information that he believed was essential to the EEOC's investigation. The EEOC refused to discuss with Frontier why a recording was necessary during the fact-finding investigation process.

Here, Frontier has attempted to provide the EEOC access to the evidence it was seeking but the EEOC was not interested in obtaining the information. It is clear by the EEOC's insistence that the information only be provided by particular individuals through recorded

deposition testimony, that the EEOC is not seeking evidence to help it make a finding, but rather, it is trying to gather improper impeachment testimony.[10]   There is no need for a compulsory process when Frontier has offered access to the information being sought.

In the absence of such reasonable and good faith efforts by the EEOC to obtain compliance without compulsory process, the Subpoena constitutes a form of harassment and intimidation.   A court will not look favorably upon the EEOC propounding subpoenas without first attempting to obtain the information requested through alternate means.   *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844.   This is particularly true when Frontier has tried to cooperate with the EEOC and has offered to provide the requested information.

### 3.   *The Subpoena seeks to improperly record Mr. Arellano's deposition in violation of the EEOC's own procedural requirements.*

The EEOC Compliance Manual states that if a deposition is required, it should be recorded by "either a stenographer or a court reporter."   Manual § 24.9(b).   It further states that the transcript of the deposition should then be provided to the witness "to read, change, and sign."   *Id*. at § 24.9(e)(1).   The Subpoena indicates that the EEOC intends only to audio-record the deposition.   *See* Attachment A.   This breaches the EEOC's own protocol and is an improper method of recording a deposition.   Frontier insists that if the Subpoena is not revoked and a deposition proceeds, that the EEOC comply with its own guidance and use either a stenographer or court reporter to record the deposition and allow Mr. Arellano the opportunity to read, change, and sign the deposition transcript.

---

[10] As discussed above, there is no legitimate purpose to require interviews be given under oath and that they be recorded.  In fact the EEOC's own guidance discourages recording interviews during the investigative process.  Manual § 23.10.

Despite Frontier's ongoing willingness to cooperate with the EEOC, both in spirit and in act, the EEOC has elected to forego such efforts and its own procedures for seeking information. For these reasons, the Subpoena should be revoked in its entirety.

### C.    The Information Sought in the Subpoena Is Not Relevant To The Investigation Of The Charges.

The EEOC's statutory investigative authority is not plenary; the EEOC is entitled to access only evidence "relevant to the charge under investigation." 42 U.S.C. §§ 2000e-8(a). In this regard, the EEOC's investigatory power is anchored to the charge of discrimination, and courts will be careful not to construe the charge and relevance requirements so broadly as to confer "unconstrained investigative authority" upon the EEOC. *Shell Oil*, 466 U.S. at 64-65; *see also EEOC v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002). The relevance requirement "is designed to cabin the EEOC's authority and prevent fishing expeditions." *Id.* (quotation marks omitted). The EEOC bears the burden of demonstrating relevance. *See EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001).

The EEOC has failed to meet its burden of demonstrating the relevance of Subpoena Request Numbers 1 through 4 because they are overbroad in scope, seek confidential information, and do not request information that will further the investigation.

Subpoena Request Numbers 2 and 3 are overbroad as to their subject matter because they lack sufficient detail and call for speculation. The ambiguous requests simply require testimony related to Ms. Freyer and Ms. Roby and all related charges of discrimination. Both requests are too indefinite and fail to describe with reasonable particularity the topics on which information is

sought. They also do not specify reasonable time restrictions. Accordingly, the requests encompass irrelevant information.

Subpoena Request Number 1 is **overbroad because it does not** provide reasonable temporal or subject matter limitations. The request does not contain any time limitations and therefore seeks information that is not relevant to the Charges. It is also overbroad as to subject matter because it seeks confidential information, the disclosure of which could infringe upon a third-party's privacy rights. The EEOC's investigatory powers "are subject to recognized privileges and protections." *United States EEOC v. Am. Apparel, Inc.*, 327 Fed. Appx. 11, 12 (9th Cir. 2009).

Subpoena Request Number 1 requests information about unspecified employees' leaves of absence, accommodations, and disciplinary actions. It is overbroad because it generally seeks information on current and former Frontier employees, regardless of the type of leave of absence they took, the reason for their leave, the type of accommodation provided, the reason for the accommodation, the type of disciplinary action they received, or the reason for the disciplinary action. Charging Parties' allegations concern pregnancy and related conditions, so information on all employees who have taken leave, been accommodated, or been subject to disciplinary action is not material to the EEOC's investigation. *EEOC v. UPS*, 2006 U.S. Dist. LEXIS 95339, at \*7 (D. Minn. 2006) ("the EEOC must show that its investigation is for a legitimate purpose authorized by Congress and that the documents subpoenaed are relevant to its inquiry."); *United Air Lines*, 287 F.3d at 654 (finding a subpoena issued by the EEOC unenforceable because the information sought went beyond the underlying charge by requesting "extensive information" about individuals who were not similarly situated to the charging party).

Furthermore, employees have a privacy interest in **their personnel information**, particularly their personal health information.[11]  Subpoena Request Number 1 infringes on the privacy interests of Frontier's other employees who are not similarly situated to the Charging Parties.  *See EEOC v. Loyola Univ. Med. Ctr.*, 823 F. Supp. 2d 835, 839 (N.D. Ill. 2011) (finding unenforceable a subpoena issued by the EEOC that sought "sensitive" information for employees who did not share similar positions, duties, or supervisors as the charging party).  There is a strong public policy against disclosure of employee information.  Federal courts have consistently refused to order broad discovery of personnel information pertaining to non-party employees.  *See Miller v. Federal Express Corp.*, 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (because of the privacy interests involved, personnel records should not be ordered produced except upon a compelling showing of relevance).

In this situation, permitting the EEOC to depose Mr. Arellano about other employees' leaves of absence, accommodations, and disciplinary actions carries with it the additional risk that such information could become public.  If this matter proceeds to litigation, there is a strong likelihood that the Charging Parties will submit FOIA requests to the EEOC to obtain information pertaining to their Charges.  The audio-recording of Mr. Arellano's deposition could be disclosed in response to such FOIA requests.[12]  Several of the ten Charging Parties are current Frontier employees and could end up receiving sensitive information about their colleagues.[13]  Any argument for relevance is outweighed by these objections.  *See EEOC v. ABM Janitorial-*

---

[11] Many leaves of absences and requests for accommodations are for health related reasons.

[12] An investigator's notes from an interview are generally protected from FOIA requests. *See* https://www.eeoc.gov/eeoc/foia/section83.cfm.  However, an audio-recording of a deposition may not receive the same protection because it does not necessarily contain the impressions of the investigator.

[13] An audio-recorded deposition will be difficult to redact.

*Midwest, Inc.*, 671 F. Supp. 2d 999, 1006 (N.D. Ill. 2009) (balancing the EEOC's interest in "marginally relevant information" against "the substantial challenges of compliance . . .").

Subpoena Request Number 4 will not provide the EEOC with any information that will help the EEOC with its investigation.   Subpoena Request Number 4 does not seek any information.   It simply creates a requirement that Mr. Arellano submit to a deposition by the EEOC.   As discussed above, the EEOC has failed to explain why a deposition is necessary or how it will further the investigation.   *See TriCore Reference Labs.*, 849 F.3d at 937 ("To show subpoenaed information is relevant, the EEOC must show it has a realistic expectation rather than an idle hope that the information requested will advance its investigation.") (internal citation omitted).   It is apparent that the EEOC is not actually interested in the information Mr. Arellano has for investigative purposes; the motive behind deposing Mr. Arellano appears to be to prepare for litigation.

Because Subpoena Request Numbers 1 through 4 seek irrelevant information, the EEOC should revoke those requests and the Subpoena in its entirety.

## IV.    CONCLUSION

For all of the foregoing reasons, Frontier respectfully urges the Commission to revoke the Subpoena in its entirety.

Dated this 13th day of August, 2018.

Danielle Kitson
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Tel:  303.629.6200 | Fax:  303.629.0200
Email:  dkitson@littler.com

Attorney for Respondent Frontier Airlines



RECEIVED
SEP 1 1 2018
EEOC DENVER FIELD OFFICE

## UNITED STATES OF AMERICA
## BEFORE THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## PHOENIX DISTRICT OFFICE
## DENVER FIELD OFFICE

IN THE MATTER OF:

| | |
|---|---|
| Randi Freyer, | CHARGE NOS. 541-2016-01704 |
| Jo Linda Roby | 541-2017-01427 |
| Stacy Rewitzer | 541-2017-01430 |
| Renee Schwarzkopf | 541-2018-00055 |
| Melissa Hodgkins | 541-2018-00056 |
| Heather Crowe | 541-2018-02436 |
| Shannon Kiedrowski | 541-2016-01707 |
| Erin Zielinski | 541-2017-01708 |
| Brandi Beck | 541-2016-01709 |
| Trisha Hughes-Draughn | 541-2018-02426 |
| | |
| Charging Parties, | |
| v. | EEOC SUBPOENA NO. DE-018-022 |
| Frontier Airlines, | |
| | |
| Respondent. | |

## RESPONDENT'S PETITION TO REVOKE OR MODIFY THE SUBPOENA
## TO MAIL DOCUMENTS

Respondent Frontier Airlines ("Frontier" or "Respondent"), by and through its undersigned counsel and pursuant to 29 C.F.R. § 1601.16(b), hereby petitions the Area Director of the Denver Field Office of the Equal Employment Opportunity Commission ("EEOC") to revoke, in whole or in part, Subpoena No. DE-018-022 ("Subpoena"). A true and correct copy of the Subpoena is included as Attachment A.

Frontier petitions to revoke the Subpoena, in whole or in part, on the grounds that it is not reasonable and is intended to harass Frontier rather than advance the EEOC's investigation of the charges of discrimination. Specifically, the EEOC should revoke the Subpoena because it unduly burdens Frontier, because the EEOC did not follow its own procedural requirements, and because the Subpoena seeks irrelevant information.

## I.     BACKGROUND

Charging Parties Randi Freyer, Jo Linda Roby, Stacy Rewitzer, Renee Schwarzkopf, Melissa Hodgkins, Heather Crowe, Shannon Kiedrowski, Erin Zielinski, Brandi Beck, and Trisha Hughes-Draughn ("Charging Parties") filed charges of discrimination against Frontier alleging that they suffered discrimination based on their sex, specifically that they suffered discrimination based on pregnancy and/or conditions related to their pregnancy and childbirth ("Charges").[1]  *See* Charges, Attachment B.  The Charging Parties assert that they were discriminated against and not accommodated while they were pregnant and/or lactating.  The first Charge was filed by Randi Freyer on or about May 6, 2016.  *Id.*  The most recent Charge was filed by Heather Crowe on or about June 15, 2018.  *Id.*  Frontier employs five of the

---

[1] Mses. Hodgkins, Rewitzer, Roby, and Schwartzkopf also allege that they suffered discrimination based on pregnancy-related disabilities.

Charging Parties as First Officers and five as Flight Attendants.  No Frontier Captains have filed a charge of discrimination.

Frontier denies all allegations that it discriminated against the Charging Parties in violation of any law.  Frontier has treated all of the Charging Parties lawfully, in compliance with their collective bargaining agreements, in accordance with its standard practices, and consistent with the manner in which it accommodates all pilots and flight attendants.

The EEOC has not yet concluded its investigation or made a determination.  It has been investigating the Charges for over two years, since the first Charge was filed.

During the time that the EEOC has been conducting its investigation, Frontier has cooperated with the EEOC.  It has maintained open communication and has attempted to provide the EEOC with the information it was seeking.  In the spirit of cooperation, Frontier provided the EEOC comprehensive position statements responding to each of the Charges.  *See* Position Statements, Attachment C.  It also has responded to multiple requests for information from the EEOC.  *See* RFI Responses, Attachment D.  Frontier coordinated the EEOC's requests for two on-site visits and requests for tours.[2]  *See* Site Visit Emails, Attachment E.  Frontier also made Aaron Rex available for an interview with the EEOC and offered to make Gerardo Arellano, Frontier Senior Human Resources Manager, Kim Powers, Supervisor of Flight Operations Administration, and the Chief Pilot (formerly Joseph Peter ("JP") Thibodeau, and now Shawn

---

[2] During the first on-site visit on April 12, 2017, Mr. Arellano provided EEOC Investigator Todd Chavez a tour of Frontier's lactation room at Denver International Airport ("DIA") and a tour of a Frontier aircraft, and permitted Investigator Chavez to speak with members of Frontier's flight crew.  During the course of the second on-site visit on May 10, 2018, Mr. Arellano provided Investigator Chavez a second tour of Frontier's lactation room, and Frontier arranged for Investigator Chavez to interview Mr. Rex.

Christensen), available for interviews. *See* Interview Emails, **Attachment F.** The EEOC did not interview Mr. Rex, Mr. Arellano, Ms. Powers, or the Chief Pilot.[3] Following the second on-site visit, the EEOC asked whether Frontier would permit it to make a recording of the inside of an aircraft. Frontier acquiesced (with respect to the body of the aircraft, but not the flight deck), but the EEOC has not yet requested a time to make the recording. *See* Aircraft Recording Emails, Attachment G.

Through the Subpoena, the EEOC is seeking to require Frontier to create responsive documents that compile and analyze data for the EEOC's benefit. The EEOC could have obtained much of the information it requests in the Subpoena through other investigative means. The primary purpose of the Subpoena appears to be for the EEOC to obtain discovery prior to the start of litigation. Frontier objects to this abuse of the EEOC's investigative authority and requests that the Subpoena be revoked.

## II.    THE SUBPOENA

The Subpoena defines the relevant period from January 2013 to Present. It lists 20 "categories" of documents that it seeks to obtain from Frontier.[4] However, all of these categories are improper and should be revoked.

Subpoena Request Number 1 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant

---

[3] Investigator Chavez even met with Mr. Rex but failed to conduct an interview when Frontier's counsel objected to Investigator Chavez administering an oath.
[4] 12 of the 20 requests have somewhere between 1 to 16 subparts.

information.[5]   Through Subpoena Request Number 1, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit.  The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 1 and it did not attempt to use other available means to obtain the information sought.  Subpoena Request Number 1 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and requires disclosure of confidential personnel information.  *See* Attachment A.

Subpoena Request Number 2 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant

---

[5] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 1 states:

1. In an electronic format submit a list of all pregnant *Captains* placed on unpaid maternity leave from January 1, 2013 through and including the present.  For each employee, include the following:
   a. First name,
   b. Last name,
   c. Date of hire,
   d. Social Security Number,
   e. Date(s) placed on unpaid maternity leave,
   f. Identify if after 32nd week of pregnancy,
   g. Was an individualized assessment performed on the employee prior to placing the pregnant pilot on unpaid maternity leave to determine what other jobs, duties or positions she could perform,
   h. Date(s) returned from unpaid maternity leave,
   i. Current employment status,
   j. Title of current position or last position occupied,
   k. If separated, date of separation,
   l. Reason for the separation,
   m. Last known residential address,
   n. Last known residential telephone number,
   o. Last known personal cellular telephone number, and
   p. Last known personal email address.

*See* Attachment A.

information.[6]   Through Subpoena Request Number 2, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit.   The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 2 and it did not attempt to use other available means to obtain the information sought.   Subpoena Request Number 2 seeks irrelevant information for an expansive timeframe and requires disclosure of confidential personnel information.   *See id.*

Subpoena Request Number 3 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant

---

[6] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 2 states:

2.   In an electronic format identified in footnote 1, submit a list of all pregnant *First Officers* placed on unpaid maternity leave from January 1, 2013 through and including the present.   For each employee, include the following:

    a.   First name,
    b.   Last name,
    c.   Date of hire,
    d.   Social Security Number,
    e.   Date(s) placed on unpaid maternity leave,
    f.   Identify if after 32nd week of pregnancy,
    g.   Was an individualized assessment performed on the employee prior to placing the pregnant pilot on unpaid maternity leave to determine what other jobs, duties or positions she could perform,
    h.   Date(s) returned from unpaid maternity leave,
    i.   Current employment status,
    j.   Title of current position or last position occupied,
    k.   If separated, date of separation,
    I.   Reason for the separation,
    m.   Last known residential address,
    n.   Last known residential telephone number,
    o.   Last known personal cellular telephone number, and
    p.   Last known personal email address.

*See* Attachment A.

information.[7]   Through Subpoena Request Number 3, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit.   It also asks Frontier to produce third party documents that the EEOC could independently acquire.   The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 3 and it did not attempt to use other available means to obtain the information sought.   Subpoena Request Number 3 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and is ambiguous.  *See id.*

---

[7] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 3 states:

   3.   Explain in detail, why a pregnant Captain or pregnant First Officer must go on leave after the 32nd week of pregnancy?  In addition, provide the following:

   a.   Is there any Federal Aviation Administration (FAA) policy, guidance and/or regulation that requires a pregnant Captain or pregnant First Officer to go on leave after her 32nd week of pregnancy?  If yes, submit a true and complete copy of all FAA documentation to support your answer.

   b.   Does Respondent perform an individualized assessment of whether or not the pregnant Captain or pregnant First Officer can perform the essential functions of their position after the 32nd week of pregnancy with or without some type of an accommodation?  If yes, explain in detail and submit all documentation to support your answer.

   c.   If the policy requiring pregnant Captains and/or pregnant First Officers to go on leave after their 32nd week of pregnancy was negotiated by Respondent and the union, submit the names, titles and genders of all parties who negotiated the original agreement for Respondent, provide the date it originally became effective and submit a true and complete copy of the original signed agreement.

      (1)   Submit the names, titles and genders of all union officials who negotiated the original agreement with Respondent and provide their contact information.

      (2)   Submit true and complete copies of the above-mentioned current agreement and the date it became effective.

*See* Attachment A.

Subpoena Request Number 4 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[8]  Through Subpoena Request Number 4, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit.  It also asks Frontier to produce third party documents that the EEOC could independently acquire.  The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 4 and it did not attempt to use other available means to obtain the information sought.  Subpoena Request Number 4 seeks irrelevant information for an expansive timeframe and is ambiguous.  *See id.*

---

[8] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 4 states:

4.  Explain, in detail, why a pregnant Flight Attendant must immediately notify the Respondent of their pregnancy, when confirmed by their doctor.   In addition, provide the following:

    a.  Is there any Federal Aviation Administration (FAA) policy, guidance and/or regulation that requires a pregnant Flight Attendant to notify the airline of their pregnancy? If yes, submit a true and complete copy of all FAA documentation to support your answer.

    b.  If the policy requiring pregnant Flight Attendants to notify Respondent of their pregnancy after confirmation by a doctor was negotiated by Respondent and the union, submit the names, titles and genders of all parties who negotiated the original agreement for Respondent, provide the date it originally became effective and submit a true and complete copy of the original signed agreement.

        (1)  Submit the names, titles and genders of all union officials who negotiated the original agreement with Respondent and provide their contact information.

        (2)  Submit true and complete copies of the above-mentioned current agreement and the date it became effective.

*See* Attachment A.

Subpoena Request Number 5 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[9] Through Subpoena Request Number 5, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 5 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 5 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and requires disclosure of confidential personnel information. *See id.*

---

[9] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 5 states:

5.   In an electronic format identified in footnote 1, submit a list of all pregnant *Captains* who requested unpaid maternity leave from January 1, 2013 through and including the present. For each employee, include the following:
   a.   First name,
   b.   Last name,
   c.   Date of hire,
   d.   Social Security Number,
   e.   Date(s) placed on unpaid maternity leave,
   f.   Date notified Frontier they were pregnant,
   g.   Was an individualized assessment performed on the employee prior to placing the pregnant pilot on unpaid maternity leave to determine what other jobs, duties or positions she could perform,
   h.   Date(s) returned from unpaid maternity leave,
   i.   Current employment status,
   j.   Title of current position or last position occupied,
   k.   If separated, date of separation,
   I.   Reason for the separation,
   m.   Last known residential address,
   n.   Last known residential telephone number,
   o.   Last known personal cellular telephone number, and
   p.   Last known personal email address.

*See* Attachment A.

Subpoena Request Number 6 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[10]   Through Subpoena Request Number 6, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit.   The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 6 and it did not attempt to use other available means to obtain the information sought.   Subpoena Request Number 6 seeks irrelevant information for an expansive timeframe and requires disclosure of confidential personnel information.   *See id.*

---

[10] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 6 states:

6.   In an electronic format identified in footnote 1, submit a list of all pregnant *First Officers* who requested unpaid maternity leave from January 1, 2013 through and including the present.   For each employee, include the following:

    a.   First name,
    b.   Last name,
    c.   · Date of hire,
    d.   Social Security Number,
    e.   Date(s) placed on unpaid maternity leave,
    f.   Date they notified Frontier they were pregnant,
    g.   Was an individualized assessment performed on the employee prior to placing the pregnant pilot on unpaid maternity leave to determine what other jobs, duties or positions she could perform,
    h.   Date(s) returned from unpaid maternity leave,
    i.   Current employment status,
    j.   Title of current position or last position occupied,
    k.   If separated, date of separation,
    l.   Reason for the separation,
    m.   Last known residential address,
    n.   Last known residential telephone number,
    o.   Last known personal cellular telephone number, and
    p.   Last known personal email address.

*See* Attachment A.

Subpoena Request Number 7 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[11]   Through Subpoena Request Number 7, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit.   The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 7 and it did not attempt to use other available means to obtain the information sought.   Subpoena Request Number 7 seeks irrelevant information for an expansive timeframe, about irrelevant employees, is ambiguous, and requires disclosure of confidential personnel information.   *See id.*

---

[11] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 7 states:

7.   In an electronic format identified in footnote 1, submit a list of all ***male Captains*** who were unable to pilot a Frontier aircraft due to: *(a) an on-the-job injury; (b) a non-work related injury; or, (c) any other medical condition or disability."*   For each employee, include the following:

   a.   First name,
   b.   Last name,
   c.   Date of hire,
   d.   Social Security Number,
   e.   Date(s) placed on unpaid leave,
   f.   Date(s) returned from unpaid leave,
   g.   If the Captain was no longer qualified to fly, explain in detail including, but not limited to, any accommodations and/or reassignments,
   h.   Current employment status,
   i.   Title of current position or last position occupied,
   j.   If separated, date of separation,
   k.   Reason for the separation,
   l.   Last known residential address,
   m.   Last known residential telephone number,
   n.   Last known personal cellular telephone number, and
   o.   Last known personal email address.

*See* Attachment A.

Subpoena Request Number 8 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[12]  Through Subpoena Request Number 8, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit.  The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 8 and it did not attempt to use other available means to obtain the information sought.  Subpoena Request Number 8 seeks irrelevant information for an expansive timeframe, is ambiguous, and requires disclosure of confidential personnel information.  *See id.*

---

[12] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 8 states:

    8.      In an electronic format identified in footnote 1, submit a list of all *male First Officers* who were unable to pilot a Frontier aircraft due to: *(a) an on-the-job injury; (b) a non-work related injury; or, (c) any other medical condition or disability."*  For each employee, include the following:

        a.      First name,
        b.      Last name,
        c.      Date of hire,
        d.      Date of birth,
        e.      Date(s) placed on unpaid leave,
        f.      Date(s) returned from unpaid leave,
        g.      If the First Officer was no longer qualified to fly, explain in detail including, but not limited to, any accommodations and/or reassignments,
        h.      Current employment status,
        i.      Title of current position or last position occupied,
        j.      If separated, date of separation,
        k.      Reason for the separation,
        l.      Last known residential address,
        m.      Last known residential telephone number,
        n.      Last known personal cellular telephone number, and
        o.      Last known personal email address.

*See* Attachment A.

Subpoena Request Number 9 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[13]   Through Subpoena Request Number 9, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit.   It also asks Frontier to produce third party documents that the EEOC could independently acquire. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 9 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 9 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and is ambiguous.  *See id.*

Subpoena Request Number 10 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[14]   Through Subpoena Request Number 10, the EEOC does not seek production of

---

[13] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 9 states:

9.   Explain, in detail, why a pregnant Captain and First Officer is required to inform Frontier within 14 days after learning of her pregnancy and submit all documentation to support your answer.  Also, submit the following:

a.   Explain, in detail, how often the pregnant Captain and First Officer is required to submit a medical clearance from the treating physician.   Is this an FAA requirement?  If so, submit the regulation.

*See* Attachment A.

[14] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 10 states:

10.   Identify by name all positions within Frontier Airlines which require the pregnant Frontier Airlines employee to take leave at a specific week in the pregnancy or specific time period in their pregnancy.   For each position identified by Respondent, submit a true and complete copy of the position description that was in effect on January 1, 2013 and all subsequent revisions, including the date they became effective.   In addition, explain in detail why the employee was/is required to take leave and submit all

existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit. It also asks Frontier to produce third party documents that the EEOC could independently acquire. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 10 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 10 seeks irrelevant information for an expansive timeframe and is ambiguous. *See id.*

Subpoena Request Number 11 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[15] Through Subpoena Request Number 11, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit. It also asks Frontier to produce third party documents that the EEOC could independently acquire.

---

documentation to support your answer including, but not limited to, all FAA policy, guidance and/or regulations.
*See* Attachment A.

[15] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 11 states:

    11.    Explain, in detail, Respondent's policy and practices for Captains and First Officers (both hereinafter "Pilots") who need to use the restroom while the aircraft is in the air and in flight. Submit true and complete copies of all documentation to support your answer. Please provide the following:

        a.    Submit true and complete copies of all FAA policies, guidance and regulations relied upon by Respondent in implementing its policies for Pilots who need to use the restroom while the aircraft is in the air and in flight ("Restroom Policies"). If Respondent's policy or practices have changed for the relative time period indicate how and when the Restroom policies changed. If the FAA policies, guidance and regulations relied upon by Respondent in implementing the Restroom Policies have also changed indicate how and when Respondent's reliance changed.

*See* Attachment A.

The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 11 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 11 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and is ambiguous. *See id.*

Subpoena Request Number 12 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[16]  Through Subpoena Request Number 12, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit.  It also asks Frontier to produce third party documents that the EEOC could independently acquire. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 12 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 12 seeks irrelevant information for an expansive timeframe, about irrelevant employees, and is ambiguous. *See id.*

Subpoena Request Number 13 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant

---

[16] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 12 states:

>  12.  Explain, in detail, Respondent's policy and practice which prevent female Captains, First Officers and Flight Attendants from harvesting or expressing breastmilk in the restroom while the aircraft is in the air and in flight.  Submit true and complete copies of all documentation to support your answer.  Please provide the following:
>
>    a.  Submit true and complete copies of FAA policies, guidance and regulations relied upon by Respondent in implementing its policies for Pilots and Flight Attendants who need to harvest or express breastmilk in the restroom while the aircraft is in the air and in flight.

*See* Attachment A.

information.[17]   Through Subpoena Request Number 13, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures and analyzing and compiling information for the EEOC's benefit.   The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 13 and it did not attempt to use other available means to obtain the information sought.   Subpoena Request Number 13 seeks irrelevant information for an expansive timeframe, about irrelevant employees, is ambiguous, and requires disclosure of confidential personnel information.   *See id.*

---

[17] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 13 states:

   13.   In its statement of position, Respondent wrote, *"The CBA does not require and Frontier's standard practices do not provide for the provision of a temporary light duty assignment at Frontier's corporate office or at the airport to any pilot (male or female) unable to fly due to: (a) an on-the-job injury; (b) a non-work related injury; or, (c) any other medical condition or disability."*  Since January 1, 2013, has any Pilot been unable to fly due to: (a) an on-the-job injury; (b) a non-work related injury; or, (c) any other medical condition or disability been assigned light duty, either temporary or permanent, at any place within Respondent's organization, including but not limited to Respondent's training facility?  If yes, explain in detail and submit all documentation to support your answer.  In addition, for each employee who received the above-mentioned light-duty, submit the following:

   a.   First name,
   b.   Last name,
   c.   Date of hire,
   d.   Social Security Number,
   e.   Date(s) assigned light-duty,
   f.   Title at the time light-duty was provided,
   g.   If separated, date of separation,
   h.   Reason for the separation,
   i.   Last known residential address,
   j.   Last known residential telephone number,
   k.   Last known personal cellular telephone number, and
   l.   Last known personal email address.

*See* Attachment A.

Subpoena Request Number 14 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[18]   Through Subpoena Request Number 14, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 14 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 14 seeks irrelevant information for an expansive timeframe and is ambiguous. *See id.*

Subpoena Request Number 15 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[19]   Through Subpoena Request Number 15, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit.

---

[18] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 14 states:

14.   From January 1, 2013 through and including the present, explain, in detail, how Respondent communicates its written rules, policies and procedures to non-management employees relating to a request to express or pump breast milk at work. If the above mentioned policy was revised after January 1, 2013, then submit true and complete copies of all revisions and submit the date they became effective.

*See* Attachment A.

[19] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 15 states:

15.   From January 1, 2013 through and including the present, explain, in detail, how Respondent communicates its written rules, policies and procedures to management employees relating to a request to express or pump breast milk at work.  If the above-mentioned policy was revised after January 1, 2013, then submit true and complete copies of all revisions and submit the date they became effective.

*See* Attachment A.

The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 15 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 15 seeks irrelevant information for an expansive timeframe and is ambiguous. *See id.*

Subpoena Request Number 16 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[20] Through Subpoena Request Number 16, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create documents explaining its policies, practices, and procedures for the EEOC's benefit. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 16 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 16 seeks irrelevant information for an expansive timeframe and is ambiguous. *See id.*

Subpoena Request Number 17 should be revoked because it fails to comply with the EEOC's own procedural requirements and because it seeks irrelevant information.[21] The EEOC

---

[20] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 16 states:

> 16. From January 1, 2013 through and including the present, explain, in detail, how Respondent communicates its written rules, policies and procedures relating to use of the lactation room at DIA since January 1, 2013. If the above-mentioned policy was revised after January 1, 2013, then submit true and complete copies of all revisions and submit the date they became effective.

*See* Attachment A.

[21] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 17 states:

> 17. Submit a true and complete copy of position description that was in effect on January 1, 2013 for the position of Captain. If the position description was revised after the above-mentioned date, submit true and complete copies of all revisions and the date they became effective.

did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 17 and it did not attempt to use other available means to obtain the information sought.  Subpoena Request Number 17 seeks irrelevant information for an expansive timeframe and about irrelevant employees.  *See id.*

Subpoena Request Number 18 should be revoked because it fails to comply with the EEOC's own procedural requirements and because it seeks irrelevant information.[22]  The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 18 and it did not attempt to use other available means to obtain the information sought.  Subpoena Request Number 18 seeks irrelevant information for an expansive timeframe.  *See id.*

Subpoena Request Number 19 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[23]  Through Subpoena Request Number 19, the EEOC does not seek production of

---

*See* Attachment A.

[22] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 18 states:

18.   Submit a true and complete copy of position description that was in effect on January 1, 2013 for the position of First Officer.  If the position description was revised after the above-mentioned date, submit true and complete copies of all revisions and the date they became effective.

*See* Attachment A.

[23] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 19 states:

19.   For the relevant time period, submit a copy of all documents that discuss accommodations for any Frontier Flight Attendant for reasons related to disability, injury, illness, or a medical condition, including pregnancy and pregnancy-related medical conditions. For each employee, provide an electronic spreadsheet containing the following information: first and last name, job title(s), sex, last known home and cellular telephone numbers, last known residential mailing address, last known personal e-mail address and dates of employment; the applicable dates of each request, the nature of each individual's disability, injury, illness, or medical condition, the nature of the accommodation requested, Respondent's response to each request for accommodation, and the duration of any accommodation provided.  Identify by full name, date of hire, and job title each decision-maker  involved in approving or

existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 19 and it did not attempt to use other available means to obtain the information sought. Subpoena Request Number 19 seeks irrelevant information for an expansive timeframe, is ambiguous, and requires disclosure of confidential personnel information. *See id.*

Subpoena Request Number 20 should be revoked because it imposes an undue burden on Frontier, fails to comply with the EEOC's own procedural requirements, and seeks irrelevant information.[24] Through Subpoena Request Number 20, the EEOC does not seek production of existing Frontier documents; instead it is an improper interrogatory request that requires Frontier to create a document analyzing and compiling information for the EEOC's benefit. The EEOC did not meaningfully seek Frontier's cooperation prior to issuing Subpoena Request Number 20 and it did not attempt to use other available means to obtain the information sought. Subpoena

---

denying each requested accommodation and include last known contact information for each decision-maker.
*See* Attachment A.

[24] For the relevant time period of January 1, 2013 to present, Subpoena Request Number 20 states:

20.   For the relevant time period, submit a copy of all documents related to the temporary placement of any current or former Frontier employee with Goodwill or any other outside employer or agency due to disability, injury, illness or medical condition, including pregnancy or pregnancy- related medical condition.  In an electronic spreadsheet, provide the following information: employee's first and last name, job title(s), sex, last known home and cellular telephone numbers, last known residential mailing address, last known personal e-mail address and dates of employment; the applicable dates of each request, the nature of each individual's disability, injury, illness, or medical condition, and the duration of any placement provided. Identify by full name, date of hire, and job title each decision-maker involved in approving or denying each requested accommodation and include last known contact information for each decision-maker.
*See* Attachment A.

Request Number 20 seeks irrelevant information for an expansive timeframe, is ambiguous, and requires disclosure of confidential personnel information. *See id.*

## III.   ARGUMENT

Pursuant to 42 U.S.C. § 2000e-9 and 29 U.S.C. § 161(1), the EEOC has the power to issue subpoenas under limited circumstances and only where: (a) it has statutory authority to conduct an investigation; (b) it follows its own procedural requirements; (c) the information sought is relevant to the investigation of the underlying charge; and (d) the request does not impose an undue burden on the responding party. *Univ. of Penn. v. EEOC*, 493 U.S. 182, 191 (1990); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *EEOC v. Kronos Inc.*, 694 F.3d 351, 357 (3d Cir. 2012) (*Kronos II*); *EEOC v. Quad/Graphics Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). Furthermore, a subpoena must meet the United States' Constitution Fourth Amendment's standard of reasonableness and must not be issued to harass the party subpoenaed or otherwise reflect an abuse of process. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950); *Reich v. Mont. Sulphur Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994); *Jackson Packing Co. v. NLRB*, 204 F.2d 842, 844 (5th Cir. 1953).

Applying these standards, Frontier objects to every category of documents sought in the Subpoena (numbered 1-20) as irrelevant. Additionally, the EEOC has also failed to follow its own procedural standards in issuing the Subpoena. Frontier further objects to most of the categories of documents sought (numbers 1-16 and 19-20) as unduly burdensome.

A.      **The Subpoena Is Unduly Burdensome.**

The Subpoena should be revoked because it imposes "an unreasonable [and] und[ue] burden" on Frontier. *Dow Chemical Company v. Ellen*, 672 F.2 1262, 1267 (7th Cir. 1982).

1.      **The Subpoena requests documents from Frontier that do not exist.**

To effectuate the purposes of Title VII, the ADA, and GINA, the EEOC has the authority to sign and issue a subpoena requiring: production of evidence including, but not limited to, books, records, correspondence or documents, in the possession or under the control of the persons subpoenaed. 29 C.F.R. 1601.16(a)(2). The EEOC does not have statutory authority to issue a subpoena requiring a respondent to prepare an analysis of information for the EEOC's benefit.

The Subpoena requires Frontier to "MAIL the documents described. . ." *See* Attachment A. However, the Subpoena does not describe documents it wants Frontier to produce. Instead it contains a Request for Information ("RFI") that seeks voluminous amounts of information that is not contained in any particular documents. A Subpoena for documents cannot require a respondent to generate new documents simply for purposes of complying with a particular request. All of the requests, except for requests 17 and 18, require Frontier to respond with compilations of data and detailed explanations of specific policies and circumstances. *See* Attachment A. As no such compilations and explanations have been previously prepared, the Subpoena seeks to compel Frontier to produce documents that do not exist or to create such

documents.[25]   The Subpoena essentially requires Frontier to expend significant resources to analyze data, documents, and information for the EEOC and to draft summaries of that analysis for the EEOC's use.   To the extent the Subpoena is intended to require Frontier to create documents which do not now exist, it is unduly burdensome and an improper request for production.

### 2.      The Subpoena requests third party documents.

The Subpoena improperly requires Frontier to produce third party information and documents.   Subpoena Requests Numbers 3, 4, 9, 10, 11, and 12 require Frontier to produce Federal Aviation Administration documents.   These documents are not exclusively in Frontier's custody and/or control.   The EEOC could obtain the documents from other sources, including directly from the Federal Aviation Administration.   It is an undue burden on Frontier to review, compile, and provide third party documents to the EEOC when the EEOC has similar access as Frontier to the documents.

### 3.      The Subpoena seeks unregulated responses to interrogatories.

The Subpoena improperly requires Frontier to respond to interrogatories prior to litigation. The Subpoena does not require the production of existing documents that will further the EEOC's investigation.   Instead the Subpoena requires Frontier respond in detail to specific questions posed by the EEOC.   The Subpoena is a request for interrogatories veiled as a Subpoena for documents.

---

[25] To respond to the Subpoena, Frontier would be required to draft over 14 detailed explanations about various policies and procedures and to create over 10 different electronic spreadsheets compiling information.

Requiring Frontier to respond to interrogatories posed by the EEOC at this time will allow the EEOC to circumvent the rules governing discovery and will prejudice Frontier in future litigation. Courts utilize an entire system of rules pertaining to discovery to protect parties from abuses during the discovery process. *See* Fed. R. Civ. P. 26 – 37. During litigation, there are restrictions on who a party can serve interrogatories, the number of interrogatories a party can ask, the length of time the responding party has to respond, the type of information that can be sought, etc. *See* Fed. R. Civ. P. 33. Here, the EEOC is trying to end-run those rules by requiring Frontier to respond to preliminary interrogatories that can be used in future litigation proceedings.

Frontier has already responded to RFIs propounded by the EEOC. It also provided detailed explanations of its policies and procedures in its position statements. Frontier even offered to allow the EEOC to conduct investigative interviews so that it may obtain any information necessary for its investigation, only to have the EEOC reject the offers and issue this Subpoena for documents. This makes it clear that the actual purpose for the Subpoena is to obtain discovery prior to litigation. A court will not enforce an EEOC request if it is made for an illegitimate purpose, excessively burdensome, or inconsistent with administrative procedural requirements. *See Univ. of Penn.*, 493 U.S. at 191; *Kronos Inc.*, 694 F.3d at 362; *Quad/Graphics, Inc.*, 63 F.3d at 645; *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc* ), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994).

Complying with the Subpoena will impose an undue burden on Frontier to prepare responses to written discovery requests multiple times.  Frontier anticipates that if this matter proceeds to litigation, the Charging Parties will request responses to interrogatories during the discovery process.  If the EEOC litigates this matter, it could request responses to interrogatories for a second time, getting essentially a second bite at the apple.[26]  Frontier will not have the same opportunity to serve multiple sets of interrogatories on the Charging Parties.  The EEOC is already attempting to exceed the permissible number of interrogatories in this Subpoena alone. Several of the requests in the Subpoena contain multiple subparts that would be treated as separate requests in the discovery process.  *See* Fed. R. Civ. P. 33.  Frontier estimates that the Subpoena contains approximately 32 interrogatory requests, at least 7 more than the 25 requests permitted by the Federal Rules of Civil Procedure.  *Id.*  In litigation, Frontier would object to the excessive number of interrogatories and the compound nature of many of the interrogatories. Through the Subpoena, the EEOC is attempting to circumvent the protections offered to a defendant during litigation.  This is an abuse of the EEOC's investigative authority.

The Subpoena constitutes an impermissible harassment of Frontier in violation of the Fourth Amendment.  *See United States v. Powell*, 379 U.S. 48, 58 (1964).  The EEOC should revoke the Subpoena to prevent these abuses of the investigatory and discovery processes and because the Subpoena imposes an undue burden on Frontier.

---

[26] Even if the EEOC does not litigate this matter, the Charging Parties will likely be able to obtain the documents and responses to the Subpoena through a FOIA request to the EEOC and use the interrogatory responses for impeachment purposes.  If the Subpoena is not revoked and Frontier responds to the requests, Frontier insists that the EEOC agree to refrain from requesting responses to written discovery a second time in any subsequent litigation.

**B.      The EEOC Failed To Follow Its Own Procedures.**

Contrary to its own guidance, the EEOC did not seek Frontier's cooperation to obtain the information necessary for its investigation or attempt to use less drastic means of obtaining the same information.   The EEOC's failure to comply with its own investigatory procedures lends credence to Frontier's reasonable belief that the Subpoena is intended to harass Frontier rather than contribute to the investigation.   Such an abuse of power constitutes a reason to revoke the Subpoena.   *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844.

**1.      The EEOC did not meaningfully seek Frontier's cooperation.**

The Subpoena should be revoked in its entirety because the EEOC did not make a good faith effort to obtain Frontier's cooperation prior to issuing the Subpoena as required by the EEOC Compliance Manual.   Manual § 24.1(a).   Frontier has been reasonable and cooperative with the EEOC throughout the two plus years that the EEOC has been investigating the Charges. Frontier has submitted detailed position statements, has responded to multiple requests for information, has allowed two site inspections including one inside an aircraft, has facilitated interviews with its employees, has offered the EEOC the opportunity to film inside an aircraft, and has kept open lines of communication throughout the investigation process.

Relevant to the Subpoena, Frontier has never refused to provide the EEOC any relevant existing document.   Frontier already provided the EEOC much of the information the Subpoena seeks in its position statements and responses to RFIs.   Despite Frontier's record of cooperation, the EEOC has failed to articulate why the information it provided was insufficient or why it

needs additional information. This is contrary to the EEOC's guidance. *See id.* ("Explain why the data is required . . ."). Rather than explain to Frontier why its position statements and responses to RFIs were deficient or why it required more information, the EEOC simply issued the Subpoena. Without an explanation of why the EEOC believes it needs Frontier to analyze and compile large amounts of data and draft detailed explanations, Frontier can only assume that the Subpoena was issued as a means of obtaining interrogatory responses in advance of future litigation.

Frontier was also cooperative in trying to help the EEOC obtain necessary information about Frontier's policies, procedures, and practices. Frontier repeatedly informed the EEOC that its Chief Pilot is the person most knowledgeable, and the witness most qualified to speak on the topics. *See* Attachment F. Frontier volunteered multiple times to make the Chief Pilot available for an interview. *See id.* Nevertheless, the EEOC refused to interview the Chief Pilot. Frontier also made other employees available to the EEOC to interview. The EEOC could have requested detailed explanations of Frontier's policies during these interviews. However, the EEOC refused to conduct any investigative interviews. Instead, the EEOC has repeatedly requested that Frontier provide irrelevant information in writing.[27]

Frontier's willingness to have employees submit to interviews and answer the EEOC's questions, and the EEOC's failure to communicate with and/or attempt to cooperate with

---

[27] After refusing to interview the Chief Pilot, the EEOC requested contact information for every captain employed by Frontier. *See* Pilot Contact Emails, Attachment H. Investigator Chavez informed Frontier that he wanted to be able to contact any pilot and interview them at random. *Id.* Frontier refused to provide the EEOC the contact information for every captain, but again recommended that the EEOC interview the Chief Pilot to obtain some of the information it is seeking. *Id.* The EEOC again refused Frontier's reasonable attempts at cooperation.

Frontier, demonstrate that the EEOC's exercise of the subpoena power in this situation is improper and unnecessary.

>    2.    **The EEOC Did Not Use Other Available Means to Obtain the Information Sought.**

The EEOC Compliance Manual provides that "a subpoena is used when a respondent fails to produce or provide access to evidence and there is not enough evidence to make a finding." Manual § 24.1(f). It further mandates that "a subpoena should only be issued when compulsory process is necessary." *Id.* at § 24.4. An investigator is expected to only use subpoenas "after other investigative methods have been attempted." *Id.* at § 24.1.

The Subpoena seeks <u>for the first time</u> certain information and responses that the EEOC has not previously requested from Frontier at any time in the past two years while this investigation has been ongoing. Frontier never indicated to the EEOC that it was unwilling to provide relevant existing documents related to the Charges. Thus, a compulsory process is not required and the Subpoena is an unnecessary burden on Frontier.

The EEOC could use other investigative methods such as investigative interviews to obtain information requested in the Subpoena. Frontier has repeatedly volunteered to make employees available for interviews to provide the EEOC information it needs for its investigation. The EEOC refused to conduct any interviews to obtain the information it now seeks in the Subpoena. The EEOC also has not provided Frontier any reason as to why it believes Frontier's employees are not qualified to provide the information the EEOC is seeking through investigative interviews. Rather than communicate with Frontier or attempt to obtain the information through other means, the EEOC prematurely resorted to issuing the Subpoena. It is

clear by the EEOC's insistence that the information only be provided by written responses to interrogatories, that the EEOC is not seeking evidence to help it make a finding, but rather, it is trying to gather improper discovery. The EEOC is unable to prove that the Subpoena will realistically "advance its investigations" as required by the Tenth Circuit. *EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 937 (10th Cir. 2017). This is an abuse of the EEOC's investigative authority. There is no need for a compulsory process before even attempting to obtain the information being sought through the methods Frontier has offered.

In the absence of such reasonable and good faith efforts by the EEOC to obtain compliance without compulsory process, the Subpoena constitutes a form of harassment and intimidation. A court will not look favorably upon the EEOC propounding subpoenas without first attempting to obtain the information requested through alternate means. *See Morton Salt*, 338 U.S. at 652-53; *Reich*, 32 F.3d at 448; *Jackson Packing*, 204 F.2d at 844. This is particularly true when Frontier has tried to cooperate with the EEOC.

Despite Frontier's ongoing willingness to cooperate with the EEOC, both in spirit and in act, the EEOC has elected to forego such efforts and its own procedures for seeking information. For these reasons, the Subpoena should be revoked in its entirety.

## C.      The Information Sought in the Subpoena Is Not Relevant To The Investigation Of The Charges.

The EEOC's statutory investigative authority is not plenary; the EEOC is entitled to access only evidence "relevant to the charge under investigation." 42 U.S.C. §§ 2000e-8(a). In this regard, the EEOC's investigatory power is anchored to the charge of discrimination, and courts will be careful not to construe the charge and relevance requirements so broadly as to

confer "unconstrained investigative authority" upon the EEOC. *Shell Oil Co.*, 466 U.S. at 64-65; *see also EEOC v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002). The relevance requirement "is designed to cabin the EEOC's authority and prevent fishing expeditions." *Id.* (quotation marks omitted). The EEOC bears the burden of demonstrating relevance. *See EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001).

The EEOC has failed to meet its burden of demonstrating the relevance of Subpoena Request Numbers 1 through 20 because they are overbroad in scope, seek confidential information, and do not request information that will further the investigation.

### 1. The Subpoena seeks information for an irrelevant time period.

The Subpoena is overbroad in scope and does not request information that will further the investigation because it does not provide reasonable temporal limitations. *See General Ins. Co. of America v. EEOC*, 491 F.2d 133 (9th Cir. 1974) (holding that demand for access to evidence going back in time nearly eight years was unduly broad). The Subpoena states that the relevant time period is from January 1, 2013 to Present.[28] *See* Attachment A. Under both Title VII and the ADA, an employee must file a charge of discrimination with the EEOC within 300 days of the discriminatory conduct. A charging party's claims are limited to acts that occurred during the 300 days leading up to the filing of the EEOC Charge – any claims related to acts before this time frame are time barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Title VII and the ADA "preclude[] recovery for discrete acts of discrimination . . . that

---

[28] Frontier is confused by the EEOC's decision to further increase the timeframe for which it is seeking information. The EEOC previously requested information beginning in 2015 and Frontier objected to the overbroad timeframe. *See* Attachment D. The EEOC has now inexplicably increased its request for information by another two years. At this point, the EEOC is seeking detailed information about employees for almost a 6 year period.

occur outside the statutory time period." *Id.* at 105.   Time barred discriminatory acts are not actionable even when they are related to acts alleged in timely filed charges. *Id.* at 113; *see also Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 176 F. Supp. 3d 1132, 1142 (D. Colo. 2016).

Accordingly, the relevant time period can begin no earlier than 300 days prior to the filing of the first relevant Charge.  Ms. Freyer was the first First Officer to file a Charge.  She filed her Charge on May 6, 2016.  Only those acts that occurred in the 300 days leading up to the filing of the first Charge by a First Officer – July 11, 2015 to present – are timely.  Ms. Roby was the first Flight Attendant to file a Charge.  She filed her Charge on May 16, 2017.  That makes the longest possible relevant time period for Flight Attendants July 20, 2016 to present – 300 days before Ms. Roby filed her Charge.  Any incidents prior to July 11, 2015 for First Officers and any incidents prior to July 20, 2016 for Flight Attendants are time barred.  Therefore, any information regarding First Officers related to the time period of January 1, 2013 to July 10, 2015 is irrelevant to the EEOC's investigation of the Charges and the EEOC is not entitled to that information.   Similarly, any information regarding Flight Attendants related to the time period of January 1, 2013 to July 20, 2016 is irrelevant to the EEOC's investigation of the Charges and the EEOC is not entitled to that information. *See Shell Oil Co.*, 466 U.S. at 64 ("The EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence "relevant to the charge under the investigation.") (*quoting* 42 U.S.C. § 2000e-8).  All of the Subpoena requests are overbroad as to timeframe.

### 2.    The Subpoena seeks irrelevant information about Frontier Captains.

Subpoena Request Numbers 1, 3, 5, 7, 9, 11, 12, 13, and 17 are overbroad as to their subject matter and do not request information that will further the EEOC's investigation. Subpoena Request Numbers 1, 3, 5, 7, 9, 11, 12, 13, and 17 seek information about Frontier Captains.  Information about Captains cannot further the EEOC's investigation into the Charges because none of the charging parties held the position of Captain.  *See TriCore Reference Labs.*, 849 F.3d at 937 ("To show subpoenaed information is relevant, the EEOC must show it has a realistic expectation rather than an idle hope that the information requested will advance its investigation.") (internal citation omitted).  Five of the Charges were filed by Flight Attendants and five were filed by First Officers; none of the Charges were filed by Captains.  *See United Air Lines*, 287 F.3d at 654 (finding a subpoena issued by the EEOC unenforceable because the information sought went beyond the underlying charge by requesting "extensive information" about individuals who were not similarly situated to the charging party).  The EEOC has failed to explain why it needs information about Captains and it has not met its burden of demonstrating relevance.  *See S. Farm Bureau Cas. Ins. Co.*, 271 F.3d at 211.

### 3.    The Subpoena is ambiguous.

Subpoena Request Numbers 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, and 20 are overbroad as to their subject matter because they lack sufficient detail and call for speculation.

Subpoena Request Numbers 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 ask Frontier to "explain, in detail" various policies, procedures, and practices.  It is unclear how Frontier can produce documents that explain policies, procedures, or practices in detail when such documents

do not exist. Furthermore, the requests are ambiguous because the Subpoena does not provide guidance on what a sufficiently detailed explanation would entail. Frontier has to speculate what information the EEOC is seeking from its detailed explanations.[29]

Subpoena Request Numbers 19 and 20 are overbroad as to their subject matter because they lack specificity. Subpoena Request Number 19 requires Frontier to submit copies of "all documents that discuss accommodations for any Frontier Flight Attendant . . ." Subpoena Request Number 20 requires Frontier to submit copies of "all documents related to the temporary placement of any current or former Frontier employee . . ." These catchall demands are too indefinite and fail to describe with reasonable particularity the information sought. *Manpower, Inc. v. EEOC*, 346 F.Supp.126 (E.D. Wis. 1972). Requests requiring Frontier to submit all documents that discuss or are related to any topic are so expansive that they will certainly encompass irrelevant information. The EEOC has failed to tailor specific requests for relevant documents.

### 4. The Subpoena seeks irrelevant confidential information.

Subpoena Request Numbers 1, 2, 5, 6, 7, 8, 13, 19, and 20 are overbroad because they do not provide reasonable subject matter limitations. Subpoena Request Numbers 1, 2, 5, 6, 7, 8, 13, 19, and 20 seek confidential information, the disclosure of which could infringe upon a third-party's privacy rights. The EEOC's investigatory powers "are subject to recognized privileges and protections." *United States EEOC v. Am. Apparel, Inc.*, 327 Fed. Appx. 11, 12 (9th Cir. 2009).

---

[29] Subpoena Request Number 12 is also ambiguous because it fails to explain what the EEOC means by "harvesting" breastmilk.

These requests require Frontier to submit information about unspecified employees' social security numbers, leaves of absence, accommodations, disabilities, injuries, medical conditions, disciplinary actions, reasons for separation of employment, home addresses, home telephone numbers, cellular telephone numbers, email addresses, etc.  They are overbroad because they generally seek information on current and former Frontier employees, regardless of the type of leave of absence they took, the reason for their leave, the type of accommodation provided, the reason for the accommodation, the type of disciplinary action they received, the reason for the disciplinary action, the reason for separation, etc.  Charging Parties' allegations concern pregnancy and related conditions, so information on all employees who have taken leave, been accommodated, been subject to disciplinary action, or separated from employment is not material to the EEOC's investigation. *EEOC v. UPS*, 2006 U.S. Dist. LEXIS 95339, at *7 (D. Minn. 2006) ("the EEOC must show that its investigation is for a legitimate purpose authorized by Congress and that the documents subpoenaed are relevant to its inquiry."); *United Air Lines*, 287 F.3d at 654 (subpoena issued by the EEOC unenforceable because it requested "extensive information" about individuals who were not similarly situated to the charging party).

Furthermore, employees have a privacy interest in their personnel information, particularly their personal health information.[30]  Subpoena Request Numbers 1, 2, 5, 6, 7, 8, 13, 19, and 20 infringe on the privacy interests of Frontier's other employees who are not similarly situated to the Charging Parties. *See EEOC v. Loyola Univ. Med. Ctr.*, 823 F. Supp. 2d 835, 839 (N.D. Ill. 2011) (finding unenforceable a subpoena issued by the EEOC that sought "sensitive"

---

[30] Many leaves of absences and requests for accommodations are for health related reasons.

information for employees who did not share similar positions, duties, or supervisors as the charging party).  There is a strong public policy against disclosure of employee information. Federal courts have consistently refused to order broad discovery of personnel information pertaining to non-party employees.  *See Miller v. Federal Express Corp.*, 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (because of the privacy interests involved, personnel records should not be ordered produced except upon a compelling showing of relevance).

In this situation, permitting the EEOC to obtain information and/or documents about other employees' social security numbers, leaves of absence, accommodations, disabilities, injuries, medical conditions, disciplinary actions, reasons for separation of employment, home addresses, home telephone numbers, cellular telephone numbers, email addresses, etc. carries with it the additional risk that such information could become public.  If this matter proceeds to litigation, there is a strong likelihood that the Charging Parties will submit FOIA requests to the EEOC to obtain information pertaining to their Charges.  Frontier's response to the Subpoena could be disclosed in response to such FOIA requests.[31]  Several of the Charging Parties are current Frontier employees and could end up receiving sensitive information about their colleagues.  Any argument for relevance is outweighed by these objections.  *See EEOC v. ABM Janitorial-Midwest, Inc.*, 671 F. Supp. 2d 999, 1006 (N.D. Ill. 2009) (balancing the EEOC's interest in "marginally relevant information" against "the substantial challenges of compliance . . .").

---

[31] An investigator's notes from an interview are generally protected from FOIA requests.  *See* https://www.eeoc.gov/eeoc/foia/section83.cfm.  However, a Subpoena response may not receive the same protection because it does not necessarily contain the impressions of the investigator.

Because Subpoena Request Numbers 1 through 20 seek irrelevant information, the EEOC should revoke those requests and the Subpoena in its entirety.

**IV.   CONCLUSION**

For all of the foregoing reasons, Frontier respectfully urges the Commission to revoke the Subpoena in its entirety.

Dated this 10th day of September, 2018.

Danielle Kitson
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Tel:  303.629.6200 | Fax:  303.629.0200
Email:  dkitson@littler.com

Attorney for Respondent Frontier Airlines

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing was served via FedEx on September 10, 2018.

Elizabeth Cadle, Phoenix District Director
Equal Employment Opportunity Commission
303 E. 17th Avenue, Ste. 410
Denver, CO 80203

Todd Chavez, Federal Investigator
Equal Employment Opportunity Commission
303 E. 17th Avenue, Ste. 410
Denver, CO 80203

Justin Moore, Federal Investigator
Equal Employment Opportunity Commission
303 E. 17th Avenue, Ste. 410
Denver, CO 80203

Danielle Kitson