**BEFORE THE UNITED STATES**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| | |
|---|---|
| **IN THE MATTER OF:** | ) **SUBPOENA NOS.**   DE-018-020 |
| | )   DE-018-021 |
| | )   DE-018-022 |
| | ) |
| | ) |
| | ) **CHARGE NOS.** |
| | ) |
| **Randi Freyer,** | )   541-2016-01704 |
| **Jo Linda Roby,** | )   541-2017-01427 |
| **Stacy Rewitzer,** | )   541-2017-01430 |
| **Renee Schwarzkopf,** | )   541-2018-00055 |
| **Melissa Hodgkins,** | )   541-2018-00056 |
| **Heather Crowe,** | )   541-2018-02436 |
| **Shannon Kiedrowski,** | )   541-2016-01707 |
| **Erin Zielinski,** | )   541-2017-01708 |
| **Brandi Beck, and** | )   541-2016-01709 |
| **Trisha Hughes-Draughn,** | )   541-2018-02426 |
| **CHARGING PARTIES,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Frontier Airlines,** | ) |
| **RESPONDENT.** | ) |

| | | | |
|---|---|---|---|
| PETITIONER: | Frontier Airlines, Inc. | BY: | Danielle Kitson |
| | 7001 Tower Road | | LITTLER MENDELSON, P.C. |
| | Denver, CO 80249 | | 1900 Sixteenth Street |
| | | | Suite 800 |
| | | | Denver, CO 80202 |

---

**DETERMINATION ON PETITIONS TO REVOKE OR MODIFY SUBPOENAS**

---

**EXHIBIT 5**

Frontier Airlines ("Frontier") has petitioned the Equal Employment Opportunity Commission (the "Commission") to revoke or modify Subpoena Nos. DE-018-020, DE-018-021, and DE-018-022, issued by the Commission's Denver Field Office.[1]  The Commission issues this determination pursuant to 29 C.F.R. §1601.16 and in accordance with Section 24.12 of the Compliance Manual.  For the reasons set forth below, the petitions are denied.

## I.  BACKGROUND

### A. Charges Alleging Discrimination

Beginning in May 2016, and continuing through May 2018, a total of ten female Charging Parties filed closely related charges of discrimination against Respondent, Frontier Airlines, Inc. ("Frontier").  They allege that Frontier's treatment of female pilots and Flight Attendants has discriminated against them in connection with pregnancy, childbirth, and breastfeeding.

Five of the charging parties are employed by Frontier as First Officers (*i.e.*, co-pilots or second pilots).[2]  Five are employed as Flight Attendants.[3]  All allege that Frontier discriminated

---

[1]     The three Subpoenas are Attached as Exhibit 1-A (Subpoena No. DE-018-020 ("Rex Subpoena")), Exhibit 1-B (Subpoena No. DE-018-021 ("Arellano Subpoena")), and Exhibit 1-C (Subpoena No. .DE-018-022 ("Document Subpoena").

[2]     Where a distinction between Captains and First Officers is relevant, this Determination uses those job titles.  Where referring to these employees or positions together, it uses "pilots."

[3]     The ten charges of discrimination are attached as Exhibits 2-A through 2-J, as follows:

|  | *Charging Party* | *Charge Number* | *Date Filed* |
|---|---|---|---|
| Exhibit 2-A | Freyer, Randy (First Officer) | 541-2016-01704 | May 6, 2016 |
| Exhibit 2-B | Kiedrowski, Shannon (First Officer) | 541-2016-01707 | May 6, 2016 |
| Exhibit 2-C | Zielinski, Erin (First Officer) | 541-2016-01708 | May 6, 2016 |
| Exhibit 2-D | Beck, Brandy (First Officer) | 541-2016-01709 | May 6, 2016 |

against them on the basis of sex, in violation of Title VII. The five Flight Attendants also allege

that Frontier has violated the Americans With Disabilities Act ("ADA") by discriminating

"against Flight Attendants based on pregnancy and disability, and pregnancy-related disability."

(*See, e.g.*, Ex. 2-E at 1 (Roby Charge)); Ex. 2-I at 1 (Crowe Charge).) All Charging Parties have

submitted substantially similar statements of harm. Each of the Flight Attendants alleges

Frontier is "systematically failing to accommodate the needs of its pregnant and breastfeeding

Flight Attendants." (*See, e.*g., Ex. 2-E at 1 (Roby Charge).) Each of the First Officers alleges

"Frontier is failing to accommodate the needs of its pregnant or breastfeeding pilots," and

"subjects its pilots to policies and practices that discriminate against women." (*See, e.g.* Ex. 2-A

at 1 (Freyer Charge).)

Broadly summarized, the charges allege that Frontier has discriminated against female

pilots and Flight Attendants during and after pregnancy in several ways, including, (1) by not

providing adequate and appropriate leave policies related to pregnancy and childbirth; (2) by

rigidly requiring female pilots and Flight Attendants to take unpaid leave during pregnancy; (3)

by failing to provide adequate accommodations for employees to breastfeed or to pump or

express breastmilk on the job after returning to work following childbirth, particularly including

on-board aircraft and in reasonable proximity to airport gates; (4) by not providing female pilots

and Flight Attendants with options for temporary work reassignment to permit them to continue

---

| Exhibit 2-E | Roby, JoLinda (Flight Attendant) | 541-2017-01427 | May 15, 2017 |
| Exhibit 2-F | Rewitzer, Stacy (Flight Attendant) | 541-2017-01430 | May 15, 2017 |
| Exhibit 2-G | Schwartzkopf, R. (Flight Attendant) | 541-2018-00055 | Oct. 5, 2017 |
| Exhibit 2-H | Hodgkins, Melissa (Flight Attendant) | 541-2018-00056 | Oct. 4, 2017 |
| Exhibit 2-I | Crowe, Heather (Flight Attendant) | 541-2018-02436 | May 5, 2018 |
| Exhibit 2-J | Hughes-Draughn, T. (First Officer) | 541-2018-02426 | May 31, 2018 |

working while pregnant or to the extent pregnancy, childbirth complications, and/or breastfeeding requirements prevent them from working in their usual roles; and (5) by unreasonably requiring its employees to provide Frontier notice of a pregnancy and/or to provide multiple medical work releases, before the pregnancy affects their abilities to perform their jobs.

Based on these policies and their individual factual allegations regarding denial of accommodations during and after pregnancies, the charges claim that Frontier's policies and practices related to pregnancy and breastfeeding both "constitute disparate treatment on the basis of sex in violation of . . . Title VII," and also have "a disparate impact on female pilots" and "a disparate impact on female Flight Attendants." (*See, e.g.*, Ex. 2-D at 6, ¶¶ 34, 35 (Beck Charge); Ex. 2-E at 11, ¶¶ 55.a.–b. (Roby Charge).)

The Charges also allege systemic, class-based discrimination. Each states that it is filed "on behalf of [the Charging Party] and others similarly situated." (*See, e.g.* Ex. 2-D at 1 (Beck Charge); Ex. 2-F at 1 (Rewitzer Charge).) Each of the Flight Attendants alleges a pattern or practice of discrimination. (*See, e.g.*, Ex. 2-E at 1 (Roby Charge) (alleging "a pattern or practice of discriminating on the basis of sex and pregnancy"); Ex. 2-F at 11, ¶ 54 (Rewitzer Charge) (alleging "a pattern or practice of denying pregnancy- and breastfeeding-related accommodations to female Flight Attendants").) At least one First Officer explicitly "request[s] that EEOC investigate all of the claims made . . . on a class-wide basis," further alleging a "pattern and practice of discrimination based on sex," which she alleges "has adversely impacted hundreds of employees." (Ex. 2-J at 7, ¶49 (Hughes-Draughn Charge).) In general, the charges allege that Frontier's policies apply equally to all female pilots and Flight Attendants and constitute company-wide discrimination.

4

**B. Frontier's Position**

Frontier denies all allegations of discrimination.  In position statements corresponding to each Charge, Frontier maintains, *inter alia*, that it had no obligation to provide greater or different accommodations than it did, that it has provided leave as required by the Family Medical Leave Act (FMLA) and by applicable Collective Bargaining Agreements ("CBAs"), that neither pregnancy nor post-pregnancy lactation are qualifying disabilities under the ADA, and that in-flight safety concerns preclude allowing pilots or Flight Attendants breaks to pump breast milk during flight.[4]  (*See, e.g.*, Ex. 3-D at 8 (Beck); Ex. 3-E at 8–9 (Roby).)

In general, Frontier states that it "treated . . . all pregnant [pilots / Flight Attendants], and those . . . wishing to express breast milk upon their return to work[] lawfully; in compliance with the [CBA] governing relevant terms and conditions of . . . employment; in accordance with its standard practices; and, most importantly, consistent with the manner in which it accommodates all [pilots / Flight Attendants] (both male and female) who are similar in their ability to work or not work." (*See, e.g.*, Ex. 3-J at 1–2; Ex. 3-I at 12.)[5]

Frontier also maintains, among other defenses, that many of the charges are time-barred to the extent they allege discrimination based on facts occurring more than 300 days before the charges were filed.

---

[4]     The Position Statements are attached as Exhibits 3-A through 3-J, following the same order in which the ten charges are attached as Exhibit 2. *See* note 3, *supra*.

[5]     Although certain of Frontier's Position Statements are branded "For Settlement Purposes Only Pursuant to CRE 408 / FRE 408," the Commission is unaware of any application of those evidentiary rules to the conduct of the Commission's investigation or to the present subpoena determination, and declines to treat the general denials included in Frontier's position statements as making them "inadmissible" for present purposes.

## C. Interviews Sought and Testimonial Subpoenas

The EEOC has investigated these charges together as alleging systemic discrimination on a class-wide basis. The EEOC sought to interview Mr. Charles A. Rex, Frontier's Assistant Chief Pilot. (*See, e.g.*, Ex. 4-A (March 1, 2018 Interview Request Letter).) Frontier initially objected to any interview of Mr. Rex and "decline[d]" the request for an interview with Mr. Rex, maintaining the EEOC should instead interview Frontier's Chief Pilot, Shawn Christensen. (*See* Ex. 4-B (April 11, 2018 E-mail from D. Kitson).) But after further correspondence in which the EEOC declined to accept a "substitute" interviewee, Frontier eventually agreed to permit an interview with Mr. Rex. (*See* Ex. 4-C April 18 & 23, 2018 E-mails.) An interview with Mr. Rex was then scheduled, but when the EEOC Investigator sought to place Mr. Rex under oath, Frontier's counsel objected to the administration of an oath. (*See* Ex. 4-D (May 10–11, 2018 E-mails).) Because the EEOC Investigator was unwilling to accept Frontier's dictation of the terms, the interview of Mr. Rex did not go forward. (*See id.*)

Around the same time, the EEOC also requested and scheduled an interview with Mr. Gerardo Arellano, Frontier's Senior Human Resources Manager. However, in advance of this interview, Frontier made clear that it objected to the EEOC's request to make an audio recording of that interview, and that Frontier's counsel would not permit the interview to go forward if recorded. (*See* Ex. 4-E (E-mails dated April 25, 2018; May 3, 2018; May 7, 2018; May 23, 2018).) The interview did not go forward.

By June 2018, it had therefore become clear that the EEOC's Investigators had reached an impasse with Frontier as to whether these witness interviews could go forward as the EEOC requested, namely, under oath and audio recorded. Frontier's counsel had made clear that they would not permit the interviews to proceed as requested. (*See* Ex. 4-F (June 5, 2018 E-mail from

6

D. Kitson).)[6]  On August 2, 2018, the EEOC therefore issued subpoenas DE-018-020 and DE-018-021, which seek to compel Mr. Rex and Mr. Arellano to provide testimony on specified topics, requiring that "[t]he testimony shall be given under oath and it will be audio-recorded." (Exs. 1-A & 1-B.)  Frontier timely petitioned to revoke or modify these two subpoenas. (Exs. 5-A & 5-B.)

## D.  Documents Sought and Document Subpoena

In addition, on August 31, 2018, the EEOC issued a third subpoena, for Frontier to produce documents. (Ex. 1-C (the "Document Subpoena").)  The subpoenaed documents were described in an attached Request for Information ("RFI"), which enumerated 20 categories of requested documents or information, related to a period from January 1, 2013 through the present.  The categories of requested documents and information are described more specifically where relevant to the analysis below.  Generally summarized, the Document Subpoena included, among other things, requests for:

- Names and identifying information of Frontier Captains, First Officers and Flight Attendants who were subject to the pregnancy-related policies at issue in the investigation;
- Names and identifying information for male Captains and First Officers who were unable to pilot aircraft due to injury, medical condition or disability *other than* pregnancy;
- Explanations and supporting documentation—including any FAA regulations on which Frontier relies—of Frontier's basis for adopting and implementing the challenged policies;

---

[6]     Frontier attached additional e-mail and correspondence exchanged during the investigation as Attachments E through H to its Petitions regarding Messrs. Rex and Arellano. Those materials are not included in their entirety here, due to their length and duplicative nature.

7

- Explanation of Frontier's policy for pilots' use of on-board restrooms (*i.e.*, for purposes other than pumping or expressing breast milk);
- Position descriptions for positions affected by Frontier's pregnancy-related policies;
- Explanations of how Frontier communicates its policies related to pregnancy and breastfeeding to its employees.

Frontier timely petitioned to revoke or modify the Document Subpoena. (Ex. 5-C.)

## II. LEGAL STANDARDS

Both Title VII and the ADA grant the EEOC broad investigatory powers, including "access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. §§ 2000e-8(a) & 2000e-9 (incorporating investigatory powers granted under 29 U.S.C. § 161 for Title VII); *see also* 42 U.S.C. § 12117(a) (same, as to ADA). The Commission may subpoena any information relevant to its investigation. *See Univ. of Penn. v. EEOC*, 493 U.S. 182, 191 (1990). Relevancy during an EEOC investigation is "generously construed," to "afford[] the Commission access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984). A subpoena will be enforced unless "plainly incompetent or irrelevant to any lawful purpose." *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1275 (10th Cir. 2002). In addition, "[a]n employer's nationwide use of a practice under investigation supports a subpoena for nationwide data on that practice." *EEOC v. Kronos, Inc.*, 620 F.3d 287, 298 (3d Cir. 2010).

## III. ANALYSIS

**A. Subpoenas for Testimony from Messrs. Arellano and Rex**

    **1.    The Information Sought is Relevant to the EEOC's Investigation.**

8

Initially, the testimonial subpoenas as to Messrs. Rex & Arellano seek information
relevant in the EEOC's investigation. Frontier does not significantly dispute that the information
sought is relevant, except to argue that the topics enumerated for interview testimony are
overbroad. (*See* Ex. 5-B at 15–18.)

The two subpoenas for testimony from Messrs, Rex and Arellano seek evidence that is
relevant to the EEOC's investigatory questions. The material terms of the two subpoenas are
identical. Each describes the testimony sought as addressing "Frontier Arline's policies,
procedures, and practices," with regard to the ADA and Title VII, and more specifically
Frontier's "pregnancy, breastfeeding and childbirth related policies, dependability policies,
maternity leave . . . reasonable accommodations for breastfeeding and temporary work
assignment and modified work duties, disciplinary actions and job duties."[7] These topics are

---

[7]     Each of the subpoenas described the subpoenaed testimony as follows:

> 1.  Testimony from Gerardo (Jerry) Arellano, Senior Employee
> Relations Manager of Frontier Airlines [Charles Aaron Rex]
> concerning his employment at Frontier Airlines, including, but not
> limited to, his role at the company and his knowledge of Frontier
> Airlines' policies, procedures, and practices, which reference or
> relate to the Americans with Disabilities Act (ADA) of 1990, as
> amended, Title VII of the Civil Rights Act of 1964, as amended,
> including pregnancy, breastfeeding and childbirth related policies,
> dependability policies, maternity leave, Family Leave and Medical
> Act (FMLA) leave, other leaves of absence, reasonable
> accommodations for breastfeeding and temporary work assignment
> and modified work duties, disciplinary actions, and job duties and
> descriptions.

> 2.  Testimony related to Linda Jo Roby and all related charges of
> discrimination.

> 3.  Testimony related to Randi Freyer and all related charges of
> discrimination.

9

closely tied to the charges of discrimination, which allege that Frontier's several policies related to leave and accommodation for pregnancy, pregnancy-related medical conditions, and breastfeeding were discriminatory against all female pilots and Flight Attendants. (*See generally* Ex. 2.) The subpoenas' topical requests naturally arise from the very same issues that are under systemic investigation, and the requested testimony comfortably fits within the broad relevance test applicable here. *See generally Shell Oil*, 466 U.S. at 68–69.

Frontier objects that this request is overbroad because it seeks information regarding employees who sought leave or other accommodation for reasons *other than* pregnancy. (*See* Ex. 5-B at 16–17.) But a key question in the investigation is whether female employees were subjected to discrimination because they were treated less favorably when requesting pregnancy-related accommodations, in comparison to employees who sought similar accommodations for other reasons. Thus questions seeking evidence that compares pregnancy-related policies and accommodations to other kinds of accommodations and medical conditions advances the EEOC's investigation and provides "a realistic expectation . . . that the information requested will advance [the] investigation." *See EEOC v. TriCore Reference Labs*, 849 F.3d 929, 937 (10th Cir. 2017) ("*TriCore*").

Frontier also objects that Request Number 1 "does not provide reasonable temporal or subject matter limitations." (Ex. 5-B at 16.) But the relevant timeframe arises from the factual allegations of the charges, which tend to show that the policies under investigation have been in force at least since 2010. (*See, e.g.*, Ex. 2-B at 4, ¶¶ 18-20 (Kiedrowski Charge).) Moreover,

---

4. The testimony shall be given under oath and it will be audio-recorded.

(Exs. 1-A & 1-B.)

these are subpoenas for live interview testimony, as opposed to subpoenas for documents or written responses. To the extent the witnesses lack knowledge regarding the questions asked, that will become apparent during the interview, but this provides no reason to revoke the subpoenas, or to curtail in advance the questions which may be asked.[8]

The subpoenas also seek testimony related to the charges filed by Ms. Freyer (the first pilot to file a charge) and Ms. Roby (the first Flight Attendant), "and all related charges of discrimination." *Id.* Again, inquiries about the charging parties and the allegations contained in the charges are facially relevant to the investigation which has arisen from those charges. Frontier objects that these requests are ambiguous and "call for speculation," but their scope is set by the content of the charges, which Frontier knows. Frontier also obviously knows which are the "related charges," since this investigation has pursued all of the above-captioned charges together, the subpoenas were expressly issued as to all ten charges, and Frontier's Petitions were also captioned as to all of the charges. (*See* Exs. 1-A, 1-B, 5-A, 5-B.) For reasons wholly unrelated to Frontier's objections, and without waiving its right to seek such information in the future, the EEOC modifies the two subpoenas for testimony to remove reference to charging party, Randi Freyer (item 2 in DE-018-020 and item 3 in DE-018-021).

Lastly, Frontier objects on relevancy grounds that its employees have a privacy interest in their personnel information, particularly health information, and that the interviews of Messrs. Rex and Arellano should not be permitted to explore such information as to employees other

---

[8]      To the extent Frontier's Petitions seek modification of the subpoenas, rather than wholesale revocation, including modification as to timeframe, Frontier fails to develop such an argument or to argue what it believes the appropriate timeframe should be. The Commission therefore does not further address Frontier's passing references to modification. *Cf. Wilburn v. Mid-S. Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) (courts "will not consider issues that are raised . . . but not adequately addressed.").

than the charging parties.  As further developed below in the context of the Document Subpoena, such claimed privacy concerns do not present a basis to revoke a subpoena or for Frontier not to comply with it.  *See infra*, Part III.B.3; *See also, e.g.*, *EEOC v. Aon Consulting, Inc.*, 149 F.Supp.2d 601, 606 (S.D. Ind. 2001) ("[T]he Supreme Court has rejected defenses based on confidentiality concerns in EEOC subpoena enforcement proceedings." (citing *EEOC v. Assoc. Dry Goods Corp.*, 449 U.S. 590 (1981) and *Univ. of Penn.*, 493 U.S. at 189)); *EEOC v. City of Milwaukee*, 54 F.Supp.2d 885, 892 (E.D. Wis. 1999) ("[A]n employer has no categorical right to refuse to comply with an EEOC subpoena unless the EEOC first assures the employer that the information supplied will be held in absolute secrecy.").

In sum, the subpoenas seek evidence relevant to the allegations in the charges and to the EEOC's systemic investigation of an alleged pattern or practice of discrimination.  The topics outlined relate directly to the charging parties and their allegations, and to comparable policies and employees, which will tend to show whether the charging parties suffered pregnancy-based discrimination in comparison to non-pregnant co-workers.

2.    **The Subpoenas Are Not Unduly Burdensome**

Frontier's chief objection to the testimonial subpoenas is that interviews conducted under oath and audio recorded would require Messrs. Rex and Arellano to "submit to a deposition." (Ex. 5-A at 6; Ex. 5-B at 6–7.)  This appears primarily to be an argument that the subpoenas place an undue burden on Frontier.  This objection fails for several reasons.

Despite Frontier's objections to having these witnesses testify under oath, EEOC enforcement staff are explicitly granted statutory authority to "administer oaths and affirmations, examine witnesses, and receive evidence." 29 U.S.C. § 161(1) (NLRA provision); 42 U.S.C. § 2000e-9 (incorporating same authority under Title VII "[f]or the purpose of all hearing and investigations conducted by the [EEOC]"); 42 U.S.C. § 12117(a) (same, as to ADA); *see also*

12

*Compliance Manual* § 24.9(a). Likewise, the "attendance of witnesses and the production of such evidence may be required. . . at any designated place of hearing." 29 U.S.C. §161(a).

Consequently, the EEOC's regulatory authority and procedural guidance properly provide—as Frontier acknowledges—that EEOC enforcement staff may "secur[e] written or oral testimony given by a witness under oath." *Compliance Manual* § 24.9(a)). Likewise, the EEOC's subpoena authority permits it to "require[e] . . . [t]he attendance and testimony of witnesses." 29 C.F.R. § 1601.16(a)(1); *see also generally, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining "testimony" to mean "[e]vidence that a competent witness *under oath or affirmation* gives . . . ." (emphasis added)).

As to audio recording of the testimony, Frontier objects that the Compliance Manual states investigators should not "ordinarily" record interviews electronically. *Compliance Manual* § 23.10. But this advisory guidance does not prohibit such recordings. To the contrary, it recognizes that recordings may be appropriate in certain circumstances. *See id.* Moreover, even assuming the guidance regarding "Interviews" in Section 23 somehow discourages recording less formal interviews, the next Section of the Compliance Manual, regarding "Subpoenas," is more relevant here, and expressly contemplates the taking of depositions, which may be both stenographically transcribed and also audio recorded, "as a backup." *Id.* § 24.9(a)-(b).

Frontier identifies no practical way in which it is unduly burdened by having the interviews go forward under oath and audio recorded, and these requirements add no perceptible burden to Frontier's compliance with interviews it otherwise would permit. Frontier argues, nevertheless, that the testimony sought would unfairly permit the EEOC to "circumvent" the limitations presumptively placed around depositions taken during litigation, and that "the EEOC is trying to end-run" the Federal Rules of Civil Procedure. (Ex. 5-A at 7; Ex. 5-B at 7.) This

13

argument fails, primarily because it obscures the critical substantive and procedural differences between an EEOC administrative investigation and adversarial civil litigation.

Initially, the Federal Rules of Civil Procedure plainly do not apply here. Both the means and the purpose of the EEOC's administrative investigation differ significantly from those of litigation. As noted, the EEOC's investigative authority expressly permits investigators to do just what they are doing here: acquire evidence, take testimony, administer oaths, and document that testimony, stenographically or by other means. The Commission rejects Frontier's suggestion that by pursuing the investigation by authorized means the EEOC's investigators have somehow betrayed an improper motive. To the extent Frontier argues that testimony taken during the investigation may give rise to some *future* prejudice, *if* litigation follows, and *if* duplicative depositions are later sought, that argument is fundamentally speculative and, at best, premature. Its underlying implication that the *possibility* of future litigation while an administrative investigation is ongoing somehow makes the latter unfair is, at most, a policy disagreement with the statutory scheme for investigations and civil enforcement actions which Congress has established and charged the EEOC to carry out. This provides no basis to revoke or modify subpoenas which are otherwise enforceable under clear and well-established authority.

As to the audio recordings, Frontier's argument boils down to an objection that the EEOC has chosen to audio record the testimony without also making a simultaneous stenographic transcript, as suggested by the Compliance Manual. Setting aside semantic arguments about the difference between, on the one hand, a "deposition," and on the other hand, an "interview" that is conducted under oath and pursuant to subpoena, neither any cited legal authority nor common sense requires the EEOC to take on the expense, effort, and inefficiency of having a court reporter formally transcribe an investigative interview, when an audio recording will serve the

same functional purposes. At least one court that has addressed this issue concluded that "it cannot conclude that the difference between recording by audio tape and recording by a court reporter is of statutory or constitutional significance." *EEOC v. AutoNation, Inc. d/b/a Lou Grubb Dodge*, No. 2:05-cv-01258-DGC (D. Ariz. April 22, 2005) (Ex. 6.) The Commission is unaware of any contrary authority (and Frontier cites none) showing that investigators are prohibited from making an audio recording of witness testimony. Far less does Frontier show that this provides a basis to revoke or modify a subpoena that is otherwise authorized and enforceable under controlling legal principles. *See generally Dillon Cos.*, 310 F.3d at 1275 (subpoenas are enforceable unless "plainly incompetent or irrelevant to any lawful purpose").

Moreover, a recording has numerous practical advantages. It is ordinarily simpler and more cost effective than a court reporter, and a formal transcript can typically be made at a later date, if desired. Digital recording technology has now become cost effective and ubiquitous to a degree unimagined when the Compliance Manual was drafted. Recording allows a single investigator to simultaneously ask questions and record the answers, reducing delays, interruptions, and omissions that are inevitable when a single questioner must simultaneously take written notes. Audio recording adds no perceptible burden for interviewees or Respondents. To the contrary, it permits investigators to complete interviews more quickly. Recording also reduces the potential for later disputes regarding an investigator's written notes or over conflicting memories. For all these reasons, there is no prohibition against an investigator creating audio recordings of important interviews conducted during investigations.

Finally, as to Frontier's objection that recorded interviews might be "used for impeachment in later litigation" (Ex. 5-A at 8), the same can be said of an investigator's written notes, or of a formal transcript. The relevant legal principle is that Frontier and its witnesses,

like all Respondents, have a duty to respond truthfully and accurately to the EEOC's questions and requests for information during an investigation. No authority entitles Frontier to answer questions one way during an investigation, and another way during any later litigation, nor to preserve Frontier's flexibility to later modify its responses by refusing to have them documented in the first place.

3.     **No Procedural Defect Requires Revocation of the Subpoenas**

Frontier argues the EEOC made insufficient efforts to obtain Frontier's cooperation and did not use other available means before issuing the subpoenas, and that the subpoenas should be revoked as a result. (*See* Ex. 5-A at 9-13.) The Commission disagrees. The EEOC Investigator sought and negotiated to obtain an interview with Mr. Rex, which Frontier resisted. But once that interview was eventually scheduled, Frontier would not permit it to go forward under oath. Similarly, Frontier made clear to the EEOC Investigator that it would not permit Mr. Arellano's interview to be recorded, and would not permit the interview to go forward as requested. The subpoenas became necessary because Frontier was *not* cooperating with the EEOC. Therefore, adequate efforts were made and frustrated before the subpoenas were issued. *See generally Compliance Manual* § 24.1

Frontier also objects that the EEOC should have interviewed another management employee, its Chief Pilot, either instead of or before Mr. Rex. (See Ex. 5-B at 4, 1112 & n.9.) This objection has been mooted by the EEOC's subsequent interview Frontier's Chief Pilot, Mr. Shawn Christensen, on October 29, 2019. Moreover, no authority supports Frontier's suggestion that the EEOC's responsibility to act cooperatively means its investigators must defer to a Respondent's choice of which employees to interview, or in what sequence. *Cf.* Compliance Manual § 23.5 (noting, particularly as to pattern or practice investigations, that investigators

16

should interview a variety of witnesses, and that although "the employer may have already stated what it believes are the standard practices . . . . some of these statements may more accurately reflect what is supposed to happen rather than what actually does. Employee interviews can provide another perspective on employment practices.").

Finally, Frontier identifies no authority calling for revocation (or even modification) of an otherwise valid subpoena simply because some or all of the information sought might also have been provided without a subpoena.[9] Courts will modify or exclude portions of an EEOC subpoena "only if the employer 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.'" *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 1980) (quoting *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)). It would make no sense to require revocation of the subpoenas only to require the EEOC to then ask for voluntary production of the same information which the Respondent has already indicated it will not provide in response to a subpoena. Moreover, the record here makes plain that Frontier was <u>not</u> willing to provide the requested information, namely, testimony of Messrs. Arellano and Rex, under oath and audio recorded. Whatever the merits of Frontier's broader claims to have been cooperative, on the specific issue of obtaining the testimony as sought by the EEOC, a subpoena was required, and Frontier has provided no reason it should not be enforced.

## B. Document Subpoena

---

[9]     The cases cited by Frontier's Petitions are readily distinguished and Frontier does not explain their application. (*See* Ex. 5-A at 9, 13.) *United States v. Morton Salt*, 338 U.S. 632, 652-53 (1950), addressed constitutional considerations not implicated here. *Reich v. Mont. Sulphur Chem. Co.,* 32 F.3d 440, 448 (9th Cir. 1994) and *Jackson Packing Co. v. NLRB*, 204 F.2d 842, 844 (5th Cir. 1953), speak in general terms about burdensome, duplicative, or overbroad subpoenas, but both upheld and enforced the subpoenas considered. None of these cases supports the proposition advanced by Frontier, that an otherwise valid subpoena should be revoked because an investigator did not first seek all of the same information by other means.

Frontier asserts various objections in boilerplate fashion against all 20 requests included in the Document Subpoena. However, in its Document Petition (Ex. 5-C), no particular objection is developed as to any particular document request. Accordingly, the Commission addresses Frontier's objections as applicable generally to all of the document requests. (*Id.* at 22–35.)

### 1.     The Information Sought is Relevant and Not Overbroad

#### a)     *Timeframe*

Frontier argues that the timeframe for which the Subpoena seeks information—January 1, 2013 through the present—is overbroad because of the 300-day limitations period for filing a charge after discriminatory conduct has occurred. (*See* Ex. 5-C at 30 (citing *Nat'l Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).) Frontier notes that the first Charge filed by a First Officer was filed on May 6, 2016 (Ex. 2-A), and the first by a Flight Attendant on May 16, 2017 (Ex. 2-E). Given those dates, Frontier objects that only information arising after July 11, 2015, for First Officers, and after July 20, 2016, for Flight Attendants, is relevant, and that to the extent the Document Subpoena seeks information from earlier dates, all of its requests are overbroad. (Ex. 5-C at 31.)

This objection fails. As noted above, the relevancy standard here is broadly construed. *See Shell Oil*, 466 U.S. at 68–69. Frontier has the burden  of showing the subpoena is overbroad. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 855 (9th Cir. 2009). The EEOC also has considerable discretion to establish the appropriate timeframe for its investigations. *See EEOC v. Randstad*, 685 F.3d 433, 451 (4th Cir. 2012) (concluding that a "thirteen-office, five-year scope of the subpoena was not an unreasonable exercise of the EEOC's discretion"). Courts generally find an EEOC request for information that goes beyond the 300 day period to be

18

relevant to investigating the charge and decline to apply blanket or *per se* 300-day time limitations as Frontier requests here. *See Kronos*, 620 F.3d at 399 (holding district court abused its discretion in limiting temporal scope of the subpoena); *EEOC v. Roadway Exp.*, 261 F.3d 634, 641–42 (6th Cir. 2001) (allowing the EEOC to seek information for a time period beyond that specifically alleged in the charge); *EEOC v. Aaron's, Inc.*, No. 11-201, 2011 WL 1357339 at *4 (N.D. Ill. April 11, 2011) (finding subpoena seeking comparative information for two years before and after employee's termination reasonable); *EEOC v. Quantum Foods, LLC*, No. 09-C-7741, 2010 WL 1693054 at *5 (N.D. Ill. April 26, 2010) ("It is not unreasonable for the EEOC to seek four years of information to investigate the charge"); *EEOC v. Sunoco, Inc.*, No. 08-MC-145, 2009 WL 197555 at *6 (E.D. Pa. Jan. 26, 2009) (rejecting temporal overbreadth objection to subpoena seeking tests used over a four year period).

Here, the EEOC's exercise of discretion in establishing the relevant timeframe is well founded, particularly in the context of a systemic, class-based investigation of an alleged pattern or practice of applying discriminatory policies. *See supra*, Part I.A. The charges under investigation, filed more than two years ago, allege a general policy of discrimination applicable to *all* female pilots and Flight Attendants, and facts alleging these policies have been in force at least since 2010. (*See, e.g.*, Ex. 2-B at 4 ¶¶ 18-20 (Kiedrowski Charge, alleging pregnancy-related leave and reassignment policies applied in 2010–11).) Given these facts, the subpoena requesting information from January 1, 2013 through the present is not unreasonable or overbroad, as it seeks information which the EEOC can reasonably expect to advance its investigation. *See generally TriCore*, 849 F.2d at 937.

Given these considerations, Frontier has not carried the burden of showing how the timeframe set by the Document Subpoena is overbroad. Frontier cites only generically

applicable legal standards, identifying no courts which have held a comparable time period overbroad in similar circumstances. (Ex. 5-C at 30-31.) Frontier makes no factual argument as to how information preceding 2015 would not advance the EEOC's investigation. It does not claim, for instance, that either its policies or their applicant changed at some time. Nor does it make any claim or showing of how it would be substantially more burdensome to respond to the subpoena for the defined period (including 2013 and 2014) than for only the later years Frontier claims are relevant (beginning in 2015). Frontier only makes the blanket objection that an automatic 300-day limitation should apply. (Ex. 5-C at 30–31.) Absent on-point legal authority or developed factual arguments, this is insufficient to carry Frontier's burden of showing the Document Subpoena is overbroad or should be revoked.

          **b)**    *Ambiguity*

       As to Requests 3–4, 7–16, 19, and 20, Frontier argues that because each asks Frontier to "explain, in detail" certain policies, without providing more "guidance on what a sufficiently detailed explanation would entail," these requests are allegedly "overbroad as to their subject matter because they lack sufficient detail and call for speculation." (*See* Ex. 5-C at 32–33.) But the Subpoena is sufficiently clear and specific that a reasonable reader is able to respond to it. No more is required. *See Dillon Cos.,* 310 F.3d at 1275. In any event, Frontier provides no authority showing why the lack of a more specific definition of the phrase "explain, in detail" provides a reason to revoke the subpoena or for Frontier to refuse to even attempt to comply with it.

       Frontier also argues that Requests 19 and 20 are "overbroad . . . because they lack specificity," and amount to impermissible "catchall demands" providing insufficient particularity. (Ex. 5-C at 33.) Request 19 asks for "all documents that discuss accommodations

20

for any Frontier Flight Attendant for reasons related to disability, injury, illness, or a medical condition, including pregnancy and pregnancy-related medical conditions," and requests a spreadsheet identifying Flight Attendants who have requested or received such accommodations. (Ex. 1-C at 6.) Request 20 asks for "all documents related to the temporary placement of any current or former Frontier employee with Goodwill or any other outside employer or agency due to disability, injury, illness or medical condition, including pregnancy or pregnancy-related medical condition," as well as a spreadsheet identifying employees who have requested or received such accommodation by means of temporary placement. (*Id.*)

Frontier contends these requests improperly "encompass irrelevant information." (Ex. 5-C at 33.) But the charges and investigation address Frontier's alleged blanket policies of not providing certain accommodations to pregnant or breastfeeding employees that are provided to non-pregnant employees, and thereby engaging in discrimination on the basis of sex and/or disability. Information tending to show whether Frontier did or did not treat pregnancy-related conditions differently than other bases for requesting accommodation bears directly on those allegations and is relevant to the investigation, both for case-by-case comparison and for statistical purposes of evaluating the charging parties' disparate impact claims. Especially in the context of this investigation, which Frontier clearly understands, the requests are sufficiently specific and unambiguous.[10] Moreover, Frontier does not argue that it does not have such information, nor show how it would be excessively burdensome to produce it.

---

[10]     The requests here are unlike those rejected in *Manpower Inc. v. EEOC*, 346 F. Supp. 126, 129 (E.D. Wis. 1972), which Frontier cites. In *Manpower*, the subpoena first included several enumerated requests for documents, which the court upheld, but then also asked for "[a]ny and all like or related records in addition to those heretofore enumerated . . .which would enable the [EEOC] to determine . . . whether *Manpower* . . . has discriminated." *Id.* The requests here

21

2. **Frontier's Objections Fail to Show any Undue Burden**

a) *Documents or Information That Need to be Compiled*

Frontier first objects that all but two of the enumerated requests "d[o] not seek production of existing Frontier documents," and would "require[e] Frontier to create a document analyzing and compiling information for the EEOC's benefit." (*See, e.g.*, Ex. 5-C at 5 (as to #1); *id.* at 22–23 (arguing that all of the requests other than numbers 17 and 19 "require Frontier to respond with compilations of data and detailed explanations," and that "the Subpoena seeks to compel Frontier to produce documents that do not exist or to create such documents.").) Frontier argues that "[t]he EEOC does not have statutory authority to issue a subpoena requiring a respondent to prepare an analysis of information," and a "[s]ubpoena for documents cannot require a respondent to generate new documents." (*Id.* at 22.)

Frontier's argument is contradicted by well-established and controlling law. For example, in *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1038 (10th Cir. 1993) (*"Diners Club"*), the Tenth Circuit rejected the exact argument Frontier makes here. There, the recipient of an EEOC subpoena argued it was not enforceable because the EEOC "cannot compel [the employer] to develop and compile summaries." *Id.* at 1038. The Tenth Circuit rejected that argument and affirmed the district court's enforcement of the EEOC's subpoena, citing numerous prior courts of appeals holding "that the EEOC may compel an employer to compile information within its control in order to respond to a subpoena, and that the subpoena power of the EEOC is not limited to the production of documents already in existence." *Id.* (citing *EEOC*

---

reflect no similar open-endedness or obligation for Frontier to determine what additional documents might assist the EEOC's investigation.

*v. Tempel Steel Co.*, 814 F.2d 482, 485 n.9 (7th Cir. 1987); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 478 (4th Cir. 1986); *and EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981)).[11]

In short, Frontier's boilerplate objection contradicts well-established and controlling legal authority (which Frontier neither acknowledges nor distinguishes), and Frontier has advanced no factual argument showing how any of the requested information is outside its control or would actually be burdensome to produce.[12]   Its argument therefore provides no basis to revoke or modify the subpoena.

**b)**   *Third Party Documents*

Frontier objects that Requests 3, 4, 9, 10, 11, and 12 are unduly burdensome because they "require Frontier to produce Federal Aviation Administration [FAA] documents which "are not exclusively in Frontier's custody and/or control," and which "[t]he EEOC could obtain . . . from other sources." (Ex. 5-C at 23.) Frontier's objection is misplaced and mischaracterizes the subpoena requests.

The Document Subpoena is not an open-ended request for FAA materials. Rather, it asks Frontier to identify and provide such materials *to the extent Frontier relies on them in*

---

[11]    *See also Motorola v. McClain*, 484 F.2d 1339, 1346 (7th Cir. 1973); *EEOC v. Centura Health*, No. 16-MC-55-WJM-CBS, 2017 WL 3821781, at *12 (D. Colo. Sept. 1, 2017) (requiring response to several "Compilation Requests" in EEOC subpoena), *aff'd* 2018 WL 1616807 (D. Colo. Apr. 4, 2018); *accord NLRB v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1266 (C.D. Cal. 2014) ("an administrative subpoena may validly require a party to compile data in order to respond to it").

[12]    Although Frontier makes a fleeting request that the Subpoena should be modified, its Document Petition argues for total revocation. (Ex. 5-C.) Frontier makes no argument showing how, for instance, any portion of the requested information would be particularly burdensome to compile or provide. Absent any developed argument, the Commission will not guess what modifications Frontier might be requesting. *Cf. Wilburn*, 343 F.3d at 1281.

*implementing the policies at issue in this investigation.* For example, in conjunction with requesting a written explanation of "why a pregnant Flight Attendant must immediately notify [Frontier] of their pregnancy, when confirmed by their doctor," Request Number 4 also asks whether there is "any . . . FAA policy, guidance, and/or regulation that requires a pregnant Flight Attendant to notify the airline of their pregnancy," and if so, to provide a copy of FAA documentation supporting Frontier's response. (Ex. 1-C at 2.)

Similarly, Request Numbers 11 and 12, respectively, call for explanations of Frontier's policies regarding pilots' use of aircraft restrooms during flight for purposes *other than* pumping or expressing breastmilk, and an explanation of Frontier's policy preventing the use of aircraft restrooms to pump breast milk. (*Id.* at 4–5.) In connection, these requests also call for Frontier to provide "all FAA policies, guidance and regulations *relied upon by* [Frontier]" in implementing these restroom policies. (*Id.*) Thus the Subpoena does not call for any and all FAA policies; it calls for those Frontier identifies and/or relies on in relation to the policies challenged by the Charges. This targets materials already known to Frontier and, presumably, within its possession. Indeed, Frontier has itself put such FAA materials at issue in this investigation, by citing and relying on them in its position statements.[13]

Frontier's Document Petition does not deny that Frontier has possession of these materials, instead arguing they are "not *exclusively* in Frontier's custody." (Ex. 5-C at 23 (emphasis added).) But other than by bald assertion, Frontier nowhere explains how it would be unduly burdensome for it to produce these materials, given that the nature of the requests seeks

---

[13]   *See, e.g.* Ex. 3-J (Hughes-Draughn Position Statement) at 8 n.9 (citing FAA regulations regarding medical certifications in connection with the CBA prohibition against pilots flying after 32 weeks of pregnancy.)

documents known to Frontier and/or relied upon by it in connection with its contested policies. The Commission does not find it overly burdensome for Frontier to provide such materials. The argument that the EEOC could itself request or obtain the materials by other means (*i.e.*, directly from the FAA materials) also fails, since the Subpoena's focus is not on any and all materials the FAA might provide, but on those identified and relied upon by Frontier as connected to its disputed policies and the discrimination alleged by the charging parties.

c)   *"Unregulated Responses to Interrogatories"*

Next, Frontier objects that the Subpoena "improperly requires Frontier to respond to interrogatories prior to litigation," and that it would "be required to draft over 14 detailed explanations about various policies and procedures" as well as providing spreadsheets listing employee information. (Ex. 5-C at 23 & n.25.) As with its argument regarding the testimonial subpoenas for Messrs. Rex and Arellano, Frontier argues based on the presumptive limitations on written interrogatories established in the Federal Rules of Civil Procedure, asserting that "the EEOC is trying to end-run those rules," that "the actual purpose for the Subpoena is to obtain discovery prior to litigation," and "to circumvent the protections offered to a defendant during litigation." (Ex. 5-C at 24-25.) Frontier suggests this reflects an improper purpose, "impermissible harassment," and "abus[e] of the investigatory and discovery processes," and also imposes an undue burden. (*Id.*)

Frontier's argument fails for the same reasons as its argument regarding allegedly improper "depositions" of Messrs. Rex and Arellano. (*See supra*, Part II.A.2.) The Federal Rules of Civil Procedure do not do not apply, precisely *because* this matter is not in litigation. Frontier's argument that *if* there is future litigation, it *may* lead to discovery, which *might* overlap with the investigation is, at most, speculative. Its concern that investigation materials may be

used for future impeachment wrongly presupposes that Frontier has a protected right to avoid providing complete and truthful information during the investigation or to take inconsistent positions in the future. (*See id.* at 25 n.26.) Its "insist[ence] that the EEOC agree to refrain from requesting responses . . . a second time in any subsequent litigation" (Ex. 5-C at 25 n.26) has no bearing on the EEOC's authority to issue an administrative subpoena, nor on Frontier's obligation to comply with it. Beyond that, Frontier's generalized insinuation of unfairness or improper motive can be rejected. The fact that the EEOC is pursuing an investigation in no way shows that it is doing something improper. Rather, it is fulfilling its statutory obligations. *See generally* 42 U.S.C. § 2000e-8.

### 3.   Objections to Alleged Procedural Defects

Frontier also objects that the Subpoena should be revoked because "the EEOC did not seek Frontier's cooperation . . . or attempt to use less drastic means of obtaining the same information," and thereby "fail[ed] to comply with its own investigatory procedures," reiterating its allegation that "the Subpoena is intended to harass Frontier rather than contribute to the investigation." (Ex. 5-C at 26.) Frontier suggests that because it previously responded to one Request for Information, it should not also have to respond to a later document subpoena.

For the same reasons explained above, Frontier has identified no supporting authority or other reason why the subpoena should be revoked just because it was not preceded by a separate request for information. *See* Part III.A.3. The Commission may issue a subpoena when it reasonably anticipates that the information will not be provided voluntarily. *See Compliance Manual* § 24.4(c). The fact that Frontier now refuses to comply with a subpoena broadly confirms the expectation it also would not have provided the requested materials without one. Frontier's insinuation of an improper motive or purpose in the investigation is unfounded. There

is no logical or legal reason why an otherwise valid subpoena must be revoked merely to go through the procedural charade of issuing a non-compulsory request for information, when Frontier has already demonstrated that it will not respond voluntarily.

### 4.   Confidential Information

Frontier objects that Requests 1–2, 5–8, 13, 19 & 20 impermissibly seek confidential information "the disclosure of which could infringe upon a third-party's privacy rights." (Ex. 5-C at 33.)  These requests call for submission of identifying information related to employees who have requested and/or received certain accommodations, or been subject to the policies at issue in this investigation. (See Ex. 1-C at 1, 3-4.)  The requested information includes, *inter alia*, social security numbers, information relevant to pregnancy, other medical conditions, or disabilities, dates relevant to employment actions, and contact information. (*See id.*)

Initially, Frontier objects that information pertaining to requests for leave, accommodation, or disciplinary action related to disabilities or medical conditions other than pregnancy are not "material to the EEOC's investigations." (Ex. 5-C at 34.)  As noted above, a central issue in the investigation is whether Frontier treated its pregnant employees less favorably than others who requested comparable accommodations or were subject to comparable policies because of conditions *other than* pregnancy.  The investigation therefore necessarily encompasses not only pregnant employees, but also those allegedly treated more favorably.

As to Frontier's privacy and confidentiality concerns, they do not provide a basis to revoke the subpoena or for Frontier to refuse to comply. *See Univ. of Penn.*, 493 U.S. at 192 (rejecting contention that EEOC's ability to acquire evidence in investigation may be limited by privileges or protections not recognized in the statute, which "can be read only as giving the Commission a right to obtain that evidence, not a mere license to seek it"); *see also Bay*

27

*Shipbuilding*, 668 F.2d at 312; *Assoc. Dry Goods*, 449 U.S. at 604 (employer does not have right to refuse to comply based on concerns information would not be held absolutely secret); *Centura Health*, 2017 WL 3821781, at *10 ("Much as other courts have concluded regarding other private information of a sensitive nature, the court concludes that the sensitive nature of non-charging parties' private medical information is not a basis for an employer to withhold the information from the EEOC." (collecting cases)).

Moreover, "the law unquestionably limits what the EEOC can do with documents and information provided in response to its subpoenas." *EEOC v. Morgan Stanley & Co., Inc.*, 132 F.Supp.2d 146, 154 (S.D.N.Y 2000). Title VII imposes criminal penalties on EEOC employees who disclose information from an EEOC investigation to the "public." See 42 U.S.C. §§ 2000e-5(b), 2000e-8(e); *Morgan Stanley*, 132 F.Supp.2d at 154 ("Section 709(e) of Title VII makes it 'unlawful' . . . to disclose information obtained by the Commission pursuant to its subpoena power."). As numerous courts analyzing similar concerns have observed, the EEOC is statutorily prohibited from disclosing information acquired during an investigation. 42 U.S.C. § 2000e-8(e); *see also, e.g.*, *Centura Health*, 2017 WL 3821781, at *10.

Accordingly, by statute and regulation, and under standard procedures, the Commission routinely denies requests for records of its investigations, except requests from the Charging Party or Respondent, because both Title VII and the ADA prohibit such disclosures. *See* 29 C.F.R. § 1601.22 (governing confidentiality of investigative files); EEOC FOIA Reference Guide § XI, *available at* https://www.eeoc.gov/eeoc/foia/handbook.cfm, Exemption 3 (authorizing the withholding of information prohibited from disclosure by another statute; noting the EEOC "routinely uses this exemption to deny access to Title VII, GINA and ADA charge files when the requestor is not a party to the charge"); *City of Milwaukee*, 54 F.Supp.2d at 893–

28

95 (discussing protection for employers' sensitive information under EEOC's statutes and procedures).

In short, the mere possibility that sensitive information might be revealed does not provide a grounds to revoke the subpoenas. Frontier objects that the charging parties, or other employees, could later obtain confidential information by means of a FOIA request. (Ex. 5-C at 35.) But again, statutory protections identify and protect the relevant privacy interests and preclude improper disclosures. For example, FOIA not only exempts from disclosure any information protected by other federal statutes, but also explicitly protects disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(3) & (6). To the extent it seeks to provide different or greater protections than are set by statute, Frontier neither provides authority justifying its request nor identifies what different privacy standard should apply. *Cf. Univ. of Penn.*, 493 U.S. at 192–93 ("Congress apparently considered the issue of confidentiality, and it provided a modicum of protection. Petitioner urges us to go further than Congress thought necessary to safeguard that value, that is, to strike the balance differently from the one Congress adopted. Petitioner, however, does not offer any persuasive justification for that suggestion.").

## IV. **DETERMINATION**

For the reasons explained above, Frontier's Petitions identify no defect or legal authority upon which the subpoenas should be revoked. To the extent Frontier alternatively requests modification of the subpoenas, it has not brought forward authority or arguments supporting modification, nor identified with any specificity what modifications it requests.

Accordingly, Frontier's Petition to Revoke or Modify the Subpoena Directed to Charles Rex, as to Subpoena No. DE-018-020 and its Petition to Revoke or Modify the Subpoena

29

Directed to Gerardo Arellano, as to Subpoena No. DE-018-021, are DENIED. Frontier's Petition to Revoke or Modify the Subpoena to Mail Documents, as to Subpoena No. DE-018-022 is also DENIED and Frontier shall therefore provide all the information and documents responsive to requests 4, 10, 19, and 20 of Subpoena No. DE-018-022. Action on the remaining requests is deferred and will be revisited at the Commission's discretion.

Frontier will provide the responsive information and documents to the EEOC's Denver Field Office within 21 days of the date of this determination. Within 7 days of the date of this determination, Frontier will contact the EEOC to reschedule the interviews of Messrs. Rex and Arellano, to be completed under oath and subject to audio recording on mutually-agreed dates.

ON BEHALF OF THE COMMISSION:

DATE: _February 19_, 2020

/Bernadette B. Wilson
Executive Officer
Executive Secretariat

Attachments:
  Ex. 1    Subpoenas
  Ex. 2    Charges of Discrimination
  Ex. 3    Frontier's Position Statements
  Ex. 4    Various E-mail Correspondence (as cited *supra*, Part I.C.)
  Ex. 5    Petitions to Revoke or Modify
  Ex. 6    Unpublished Legal Authority (*EEOC v. AutoNation d/b/a Lou Grubb Dodge*)